TOMMIE JEAN TRUESDALE v. UNIVERSITY OF NORTH CAROLINA, WIN-STON-SALEM STATE UNIVERSITY, JAMES W. LEWIS, AND ROBERT FENNING

No. 8721SC1218

(Filed 6 September 1988)

1. **Pleadings § 36.2— issues not raised in pleadings—improperly considered**

    The trial court erred in an action arising from plaintiff's refusal to take a polygraph examination by concluding that the polygraph requirement for company police officer certification was without statutory authorization, that the proposed polygraph examination would not have met the requirements of *Warren v. City of Asheville*, 74 N.C. App. 402, and that the proposed rule violates the North Carolina Constitution where neither the complaint nor the amended complaint presented those issues and there was no trial by implied consent because the evidence supporting those contentions would also support allegations in the complaint.

2. **State § 4.4— U.N.C. and W.S.S.U.—sovereign immunity applicable**

    Summary judgment should have been granted for the University of North Carolina and Winston-Salem State University based on sovereign immunity in an action arising from plaintiff's refusal to take a polygraph examination to be certified as a company police officer where there was no allegation or contention that plaintiff had any contract. The purpose of N.C.G.S. § 116-3 is to allow U.N.C. and its constituent institutions to sue and be sued in their own names but only as otherwise specifically provided by law.

3. **State § 4.2— action against university officials**

    In an action arising from plaintiff's refusal to take a polygraph examination in order to be certified as a company police officer and her subsequent loss of employment as a campus security officer, the trial court erred by

awarding monetary damages for back pay against the Vice Chancellor for Business Affairs at Winston-Salem State University and the Director of Campus Police at Winston-Salem State University in either their official or individual capacities because sovereign immunity has not been waived by statute and the Court of Appeals could not determine from the record whether or not either of the two State officials knew or should have known that plaintiff's rights as guaranteed by the United States Constitution in 42 U.S.C. Section 1983 might be violated by administering the polygraph examination.

**4. Injunctions § 11— prospective injunctive relief against State officials**

In an action arising from plaintiff's refusal to take a polygraph examination to become certified as a company police officer in which the trial court required plaintiff's reinstatement, plaintiff may be entitled to prospective injunctive relief in state court against defendants in their official capacities to the same extent as in federal court, where it has been held that prospective injunctive relief is the appropriate remedy in Section 1983 actions.

**5. Privacy § 1; Constitutional Law § 17— polygraph as job requirement—no violation of constitutional right of privacy**

In an action which arose from plaintiff's dismissal as a campus security officer following her refusal to take a polygraph examination, the trial court erred by concluding that the polygraph examination violated plaintiff's constitutional right to privacy where the control questions asked prior to administering the actual examination included questions relating to theft, prior commission of crimes, homosexual activity, sexual arousal by contact with children, unusual sex acts and anti-governmental activity. The fundamental rights entitled to protection under the right to privacy, including family relationships, marriage or procreation, bear no resemblance to the right to engage in the activities in question.

**6. Constitutional Law § 74— polygraph examination as job requirement—no violation of privilege against self-incrimination**

The Court of Appeals could not determine from the record whether plaintiff would have been dismissed from her employment had she appeared for a required polygraph examination and exercised her privilege against self-incrimination and the case was remanded for trial court determination of whether plaintiff would have been discharged from her employment had she appeared and exercised her privilege.

APPEAL by defendants from *Freeman (William H.), Judge.* Judgment entered 19 October 1987 in Superior Court, FORSYTH County. Heard in the Court of Appeals 3 May 1988.

*Moore & Brown, by B. Ervin Brown, II, for plaintiff-appellee.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Thomas J. Ziko, for defendants-appellants.*

SMITH, Judge.

Plaintiff instituted this action against Winston-Salem State University (WSSU) alleging that she was employed on 14 November 1984 as a campus security officer. The record discloses that at the time of plaintiff's employment she was informed that prior to becoming a permanent employee she would be a probationary employee for nine months and would be required to take a polygraph examination as part of the requirements for becoming certified as a company police officer. The Attorney General, through the North Carolina Criminal Justice Education and Training Standards Commission, had adopted administrative rules requiring that candidates for certification as company police officers take and successfully pass a polygraph examination. 12 N.C.A.C. .0201 *et seq.* Plaintiff was informed that if she failed to be certified as a company police officer she could still become a permanent employee if she passed the basic law enforcement officer course and was appointed a special deputy of Forsyth County. Plaintiff agreed to submit to the polygraph examination. On 29 April 1985 and 8 July 1985, plaintiff failed to appear for the scheduled polygraph examinations. She was given time off from work for the first examination. Plaintiff alleges that she refused to take the scheduled polygraph examinations after receiving information that some of the examination questions would address her sexual practices, preferences and partners. On 31 July 1985, defendant notified plaintiff that her employment would be terminated effective 13 August 1985 for insubordination arising out of her refusal to take the polygraph examination.

Plaintiff alleged in her first claim for relief that WSSU violated her rights as guaranteed by the Fifth, Ninth and Fourteenth Amendments to the United States Constitution and that defendant's actions violated 42 U.S.C. Section 1983. Plaintiff alleged in her second claim for relief that WSSU's acts constituted an unlawful attempt to administer a polygraph examination in violation of 12 N.C.A.C. .0304(a)(1). During oral argument in this Court, plaintiff's counsel abandoned this second claim for relief. Plaintiff requested reinstatement to her position with back salary and restoration of all benefits.

WSSU filed an answer which denied the material allegations of plaintiff's complaint. In addition, defendant alleged that: the

complaint fails to state a claim upon which relief could be granted and should be dismissed pursuant to G.S. 1A-1, Rule 12(b)(6); WSSU is immune from suit under the doctrine of sovereign immunity; WSSU is not a "person" subject to suit under 42 U.S.C. Section 1983; and plaintiff's acceptance of probationary employment constituted a waiver of any rights she might have had to refuse to take the polygraph examination.

On 21 October 1986, plaintiff filed a motion for summary judgment. Thereafter, on 28 August 1987, plaintiff filed an amended complaint naming as additional defendants the University of North Carolina (UNC); Robert Fenning (Fenning), Vice Chancellor for Business Affairs at WSSU; and James W. Lewis (Lewis), Director of Campus Police at WSSU. The material allegations of the amended complaint were essentially the same as contained in plaintiff's initial complaint. Defendants filed an answer incorporating the denials and defenses alleged in the original answer. On 15 September 1987, defendants filed a motion for summary judgment. Plaintiff and defendants filed affidavits, exhibits and depositions supporting their respective motions for summary judgment. On 19 October 1987, the trial court granted plaintiff's motion for summary judgment and ordered reinstatement with back wages. In granting plaintiff's motion, the trial court concluded that: plaintiff's termination for refusal to submit to the polygraph examination violated her rights as guaranteed by the Fifth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the North Carolina Constitution as well as 42 U.S.C. Section 1983; the polygraph examination failed to comply with the requirements of *Warren v. City of Asheville*, 74 N.C. App. 402, 328 S.E. 2d 859, *disc. rev. denied*, 314 N.C. 336, 333 S.E. 2d 496 (1985); and the polygraph requirement for company police officer certification was without statutory authorization. Defendants appeal assigning as error the court's granting of summary judgment in plaintiff's favor in that (1) there is no constitutional prohibition against the use of the polygraph examination in conducting background investigations of prospective law enforcement officers; (2) plaintiff has alleged no claim for relief under the North Carolina Constitution; (3) plaintiff's discharge did not violate her right to privacy or her privilege against self-incrimination; (4) there is statutory authority for requiring a polygraph examination in this instance; and (5)

the trial court had no authority to order defendants to pay plaintiff's back wages. Additionally, defendants assign error to the trial court's denial of their motion for summary judgment.

We note that the record before this Court contains no order permitting plaintiff to file her amended complaint. A plaintiff may amend a complaint once as a matter of right at any time before a responsive pleading is served. G.S. 1A-1, Rule 15(a). Thereafter, the rule requires leave of the court to file an amended complaint. Plaintiff's amended complaint was filed some thirteen months after defendants' answer was served. Though we are unable to determine from the record that the court granted leave to file the amended complaint, we choose to address the merits of this case "[t]o prevent manifest injustice." App.R. 2.

[1] We first address defendants' assignments of error to the trial court's conclusions that the rule in question was adopted without statutory authority and is thus invalid, that the proposed polygraph examination would not have met the requirements of *Warren v. City of Asheville,* and that the polygraph examination violates Article I, sec. 19 of the North Carolina Constitution. Neither the complaint nor the amended complaint present these issues. In *Moody v. Kersey,* 270 N.C. 614, 155 S.E. 2d 215 (1967), our Supreme Court held that a "plaintiff must make out [her] case *secundum allegata.* There can be no recovery except on the case made by [her] pleadings." *Id.* at 618, 155 S.E. 2d at 218 (citations omitted).

> Under North Carolina's "notice theory of pleading," a trial proceeds on the issues raised by the pleadings unless the pleadings are amended. If an issue not raised by the pleadings is tried by the "implied consent" of the parties, the pleadings are deemed amended, as in a contract case in which plaintiff, without objection, presents evidence of negligence. When, however, the evidence used to support the new issue would also be relevant to support the issue raised by the pleadings, the defendant has not been put on notice of plaintiff's new or alternate theory. Therefore, defendant's failure to object does not constitute "implied consent."

*Gilbert v. Thomas,* 64 N.C. App. 582, 585, 307 S.E. 2d 853, 855-56 (1983) (citations omitted). In the instant case, the evidence which would support the contentions that the administrative rule was

adopted without statutory authorization, did not meet the requirements of *Warren v. City of Asheville*, and was adopted in violation of the North Carolina Constitution would also support plaintiff's allegations that defendants' actions violated plaintiff's rights as guaranteed by the United States Constitution and 42 U.S.C. Section 1983. Thus, there was no implied consent to determine the additional issues. Those portions of the trial court's judgment concluding that the administrative rule was not authorized by statute, that the proposed polygraph examination would not meet the requirements of *Warren v. City of Asheville* and that the rule violates the North Carolina Constitution are reversed.

[2] Next we address the contention of defendants UNC and WSSU that the trial court erred in granting summary judgment for the plaintiff and failing to grant summary judgment for them for the reason that the State has not waived its sovereign immunity in actions brought pursuant to 42 U.S.C. Section 1983. A trial court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c); *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). If the pleadings and proof establish that no claim for relief exists, summary judgment is proper. *Coleman v. Cooper*, 89 N.C. App. 188, 366 S.E. 2d 2, *disc. rev. denied*, 322 N.C. 834, 371 S.E. 2d 275 (1988). In ruling on the motion, the court must consider the evidence in the light most favorable to the non-movant. *Walker v. Westinghouse Electric Corp.*, 77 N.C. App. 253, 335 S.E. 2d 79 (1985), *disc. rev. denied*, 315 N.C. 597, 341 S.E. 2d 39 (1986). The non-movant must be given all favorable inferences which may reasonably be drawn from the facts proffered. *English v. Realty Corp.*, 41 N.C. App. 1, 254 S.E. 2d 223, *disc. rev. denied*, 297 N.C. 609, 257 S.E. 2d 217 (1979); *Whitley v. Cubberly*, 24 N.C. App. 204, 210 S.E. 2d 289 (1974). Therefore, any documents presented which support the movant's motion must be strictly scrutinized while the non-movant's papers are regarded with indulgence. *Miller v. Snipes*, 12 N.C. App. 342, 183 S.E. 2d 270, *cert. denied*, 279 N.C. 619, 184 S.E. 2d 883 (1971).

It has long been the rule in this State that the doctrine of sovereign immunity prevents the State or any of its agencies from being sued without its consent. E.g., *Insurance Co. v. Gold, Commissioner of Ins.*, 254 N.C. 168, 118 S.E. 2d 792 (1961). Plaintiff contends that G.S. 116-3 which provides in part that UNC "shall be able and capable in law to sue and be sued in all courts whatsoever" abolishes the doctrine of sovereign immunity insofar as UNC and its constituent institutions are concerned. We do not agree. The purpose and intent of G.S. 116-3 is to allow UNC and its constituent institutions to sue and be sued in their own names but only as otherwise specifically provided by law. We do not believe that the General Assembly intended to abolish the doctrine of sovereign immunity. In *MacDonald v. University of North Carolina*, 299 N.C. 457, 263 S.E. 2d 578 (1980), our Supreme Court held dismissal under the doctrine of sovereign immunity was proper in a suit on an employment contract against the University of North Carolina at Chapel Hill. The University of North Carolina at Chapel Hill and WSSU enjoy identical status under state law. G.S. 116-4. Thus, the doctrine of sovereign immunity will bar any action against UNC or WSSU.

We are aware of *Smith v. State*, 289 N.C. 303, 222 S.E. 2d 412 (1976), in which the defense of sovereign immunity was abolished in breach of contract actions. In this case, however, there is no allegation or contention that plaintiff had any contract. Thus, we conclude that the lower court erred in granting plaintiff's motion for summary judgment insofar as UNC and WSSU are concerned. Rather, we hold that summary judgment should have been granted in favor of these two defendants.

Defendants UNC and WSSU further contend that the trial court erred in granting plaintiff's motion for summary judgment against the two institutions in that they are not "persons" within the meaning of 42 U.S.C. Section 1983. In light of our ruling with regard to sovereign immunity, it is not necessary to address this contention.

[3] Next defendants assign as error the award of back pay to plaintiff. Neither the complaint nor the amended complaint indicates whether defendants Fenning and Lewis are being sued in their official capacities or individual capacities or both. The judgment of the trial court also fails to make this distinction. We

therefore first address the issue as if the monetary award for back pay was against the two named individuals in their official capacities. Our Supreme Court has held that when an action is brought against individual officers in their official capacities, the action is one against the State for the purposes of applying the doctrine of sovereign immunity. *Insurance Co. v. Unemployment Compensation Com.*, 217 N.C. 495, 8 S.E. 2d 619 (1940). We hold that there can be no award of monetary damages against a State employee in his official capacity. Such an award would, in essence, be an award against the State since it would be paid from the State treasury. We are cognizant of G.S. 143-300.6 which provides for payment by state agencies of any judgment or settlement against a state employee. However, this statute specifically states that it shall not be deemed to waive the sovereign immunity of the State. Because sovereign immunity has not been waived by the statute, there can be no monetary recovery against defendants Fenning and Lewis in their official capacities.

We next address the monetary award as if defendants Lewis and Fenning are being sued in their individual capacities. It is well established in federal courts that state officials sued in their individual capacities may be liable for monetary damages. *Kentucky v. Graham*, 473 U.S. 159, 87 L.Ed. 2d 114, 105 S.Ct. 3099 (1985). *See Ex parte Young*, 209 U.S. 123, 52 L.Ed. 714, 28 S.Ct. 441 (1908). Even then, however, the officials may assert the defense of qualified immunity. *Wood v. Strickland*, 420 U.S. 308, 43 L.Ed. 2d 214, 95 S.Ct. 992, *reh'g denied*, 421 U.S. 921, 43 L.Ed. 2d 790, 95 S.Ct. 1589 (1975); *Paxman v. Campbell*, 612 F. 2d 848 (4th Cir. 1980), *cert. denied*, 449 U.S. 1129, 67 L.Ed. 2d 117, 101 S.Ct. 951 (1981). To raise the defense, which does not apply to injunctive relief, the challenged conduct must not have violated a clearly established constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 73 L.Ed. 2d 396, 102 S.Ct. 2727 (1982).

In *Wood v. Strickland, supra,* the Supreme Court held that an official was not entitled to good-faith immunity "if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [person] affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Id.* at 322, 43 L.Ed. 2d at 225, 95 S.Ct. at 1001.

From the record before us, we are unable to determine whether or not either of the two state officials knew or reasonably should have known that plaintiff's rights as guaranteed by the United States Constitution and 42 U.S.C. Section 1983 might be violated by the administering of the polygraph examination. Therefore, the trial court erred in granting summary judgment and awarding back pay to plaintiff against Fenning and Lewis in their individual capacities.

[4] Next we address the trial court's granting of prospective injunctive relief against Fenning and Lewis in their official capacities. The trial court's judgment required plaintiff's reinstatement. In *Snuggs v. Stanly Co. Dept. of Public Health,* 310 N.C. 739, 314 S.E. 2d 528 (1984), the Supreme Court held that a section 1983 action could be maintained in the state courts. This Court has previously ruled that when a State employee asserts civil rights violations under section 1983 for wrongful dismissal, the court retains its traditional power to grant injunctive relief. *Williams v. Greene,* 36 N.C. App. 80, 243 S.E. 2d 156, *disc. rev. denied and appeal dismissed,* 295 N.C. 471, 246 S.E. 2d 12 (1978).

We find it helpful to review federal cases in deciding the appropriate remedy for unlawful discharge from employment. It has been held that prospective injunctive relief, in this case reinstatement, is the appropriate remedy in 1983 actions. *Quern v. Jordan,* 440 U.S. 332, 59 L.Ed. 2d 358, 99 S.Ct. 1139 (1979); *Edelman v. Jordan,* 415 U.S. 651, 39 L.Ed. 2d 662, 94 S.Ct. 1347, *reh'g denied,* 416 U.S. 1000, 40 L.Ed. 2d 777, 94 S.Ct. 2414 (1974); *Skehan v. Bd. of Trustees of Bloomsburg State Col.,* 590 F. 2d 470 (3d Cir. 1978), *cert. denied,* 444 U.S. 832, 62 L.Ed. 2d 41, 100 S.Ct. 61 (1979). Ordinarily, the Eleventh Amendment would bar actions in federal court when the State is the real party in interest. An exception to this rule arises, however, when there is a constitutional attack on the official action. *Ex parte Young, supra.* A suit challenging the validity of a state official's actions on federal grounds is not considered an action against the state. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 79 L.Ed. 2d 67, 104 S.Ct. 900 (1984). The theory supporting this fiction is that a state may not authorize its officials to violate federal law. *Id.; Young, supra.* Even though we believe that sovereign immunity ordinarily protects the individual defendants acting in their official capacities, we hold that in section 1983 actions in which prospective injunc-

tive relief is sought, sovereign immunity is pre-empted by federal law. *Felder v. Casey,* --- U.S. ---, --- L.Ed. 2d ---, 108 S.Ct. 2302 (1988). In *Felder,* the United States Supreme Court held that state substantive law which conflicts with the remedial objective of section 1983 and "will frequently and predictably produce different outcomes in [section] 1983 litigation based solely on whether the claim is asserted in state or federal court . . . is pre-empted." *Id.* at ---, --- L.Ed. 2d at ---, 108 S.Ct. at 2307. Therefore, we hold that plaintiff may be entitled to prospective injunctive relief in State court against defendants Fenning and Lewis in their official capacities to the same extent as in federal court.

[5] Lastly, we address the trial court's conclusion that defendants' actions in requiring the polygraph examination violated plaintiff's rights as guaranteed by the Fifth, Ninth and Fourteenth Amendments to the United States Constitution and also violated 42 U.S.C. Section 1983. In this regard, defendants assert that plaintiff has no constitutional right to refuse to take the polygraph examination. However, defendants misstate the issue. The central issues are whether the questions violate plaintiff's right to privacy and whether plaintiff can be required to surrender her privilege against self-incrimination.

The control questions which are asked prior to the administering of the actual polygraph examination include questions relating to theft, prior commission of crimes, homosexual activity, sexual arousal by contact with children, unusual sex acts and anti-governmental activity. The actual polygraph questions, which are only thirteen in number, are designed to determine if the applicant was untruthful on the application for employment or in answering the control questions.

Requiring plaintiff to answer questions regarding sexual practices, preferences and partners does not violate her constitutional right to privacy. The control questions address homosexual activity, sexual arousal by viewing children, sexual contact with minors and unusual or unnatural sex acts. There is no fundamental right to engage in homosexual activity. *Bowers v. Hardwick,* 478 U.S. 186, 92 L.Ed. 2d 140, 106 S.Ct. 2841, *reh'g denied,* --- U.S. ---, 92 L.Ed. 2d 779, 107 S.Ct. 29 (1986). The right to engage in such activities is not entitled to heightened judicial protection

as a fundamental liberty " 'implicit in the concept of ordered liberty.' " *Id.* at 191, 92 L.Ed. 2d at 146, 106 S.Ct. at 2844, *quoting Palko v. Connecticut,* 302 U.S. 319, 325, 82 L.Ed. 288, 292, 58 S.Ct. 149, 152 (1937). The other sexual activities addressed by the control questions are likewise not entitled to protection as a fundamental right. The fundamental rights entitled to protection under the right to privacy, including family relationships, marriage or procreation, bear no resemblance to the right to engage in the activities in question. *See Bowers v. Hardwick, supra.* Thus, the trial court erred in concluding that the polygraph examination violated plaintiff's constitutional right to privacy.

[6] Next we address plaintiff's contention that the polygraph examination would have violated her privilege against self-incrimination. In the case at bar the undisputed facts show that had plaintiff attended either of the scheduled polygraph examinations she would have been asked to sign a form which states in part the following:

> I fully realize that: I am not required to take this examination, I may first consult with an attorney or anyone I wish before either signing this form or taking the examination, I have the right to remain silent the entire time I am here, anything I may say can be used against me in any court of law, I have the right to talk to a lawyer for advice before answering any questions and to have him present during questioning. If I can not afford an attorney and desire one, an attorney will be appointed for me before any questioning if I wish. If I decide to answer questions now without a lawyer present, I will still have the right to stop answering at any time. I also have the right to stop answering at any time until I have talked to a lawyer, and I have the opportunity to exercise all these rights at any time I wish during the entire time I am here.

If plaintiff had been required to answer narrow and specific questions relating to performance of her duties as a security officer without being required to waive her immunity as to subsequent prosecution, there would be no violation of the privilege against self-incrimination. *Gardner v. Broderick,* 392 U.S. 273, 20 L.Ed. 2d 1082, 88 S.Ct. 1913 (1968); *Warren v. City of Asheville, supra.*

The privilege against self-incrimination, limited by its terms to "any criminal case," does not prevent a governmental unit from taking non-criminal disciplinary action against an employee on the basis of compelled testimony . . . . [H]owever, . . . a governmental unit which requires an employee to make potentially incriminating statements may not burden the employee's right to exercise the privilege in a later criminal proceeding by threatening to discipline or discharge the employee if he or she refuses to waive it.

*Hester v. City of Milledgeville*, 777 F. 2d 1492, 1495-96 (11th Cir. 1985), *reh'g denied*, 782 F. 2d 180 (11th Cir. 1986).

However, we are unable to determine from the record before us whether plaintiff would have been dismissed from employment had she appeared for the polygraph examination and exercised her privilege against self-incrimination. For this reason, that portion of the court's order granting summary judgment and injunctive relief to plaintiff, even if against defendants Fenning and Lewis in their official capacities, must be reversed. On remand, the trial court must determine the consequences to plaintiff had she exercised her privilege against self-incrimination. We also hold that even should reinstatement be ultimately ordered, it would have to be subject to the condition that plaintiff otherwise comply with the requirements for employment which were that she pass the basic law enforcement course and be sworn in as a special deputy.

We do not believe that plaintiff is entitled to any greater relief in a section 1983 action brought in the state courts than she could obtain in federal court. The effect of this decision is to insure that plaintiff's relief, if any, will be the same that she might have in a federal court under 42 U.S.C. Section 1983. We note that in federal court the Eleventh Amendment to the United States Constitution would mandate the same result we have reached in this case. *See Quern v. Jordan, supra; Edelman v. Jordan, supra; Skehan v. Bd. of Trustees of Bloomsburg State Col., supra; Thonen v. Jenkins*, 517 F. 2d 3 (4th Cir. 1975); *Brennan v. University of Kansas*, 451 F. 2d 1287 (10th Cir. 1971).

In summary we hold that: (1) summary judgment should have been granted for UNC and WSSU on all claims for relief; (2) the trial court must determine whether plaintiff would have been dis-

charged from her employment had she appeared for the polygraph examination and exercised her privilege against self-incrimination; (3) monetary damages (back pay), if recovered, may only be assessed against defendants Fenning and Lewis in their individual capacities and may be subject to be defeated by the doctrine of qualified immunity; and (4) prospective injunctive relief may only be granted, if at all, against defendants Fenning and Lewis in their official capacities. Having determined that the trial court erred in granting plaintiff's motion for summary judgment, we find it unnecessary to address other contentions of the parties.

For the reasons given, the trial court is reversed.

Reversed and remanded.

Judges JOHNSON and PHILLIPS concur.