DR. ALVIS L. CORUM, PLAINTIFF-APPELLEE v. UNIVERSITY OF NORTH CAROLINA THROUGH ITS BOARD OF GOVERNORS; C. D. SPANGLER, PRESIDENT OF THE UNIVERSITY OF NORTH CAROLINA IN HIS OFFICIAL CAPACITY; APPALACHIAN STATE UNIVERSITY; AND JOHN THOMAS, CHANCELLOR OF APPALACHIAN STATE UNIVERSITY, AND HARVEY DURHAM, DEFENDANTS

No. 8924SC120

(Filed 20 March 1990)

1. **Appeal and Error § 6.8 (NCI3d) — denial of summary judgment — sovereign and qualified immunity — immediate appeal**

     The denial of defendants' motion for summary judgment made on grounds of sovereign and qualified immunity affected a substantial right and was immediately appealable.

     **Am Jur 2d, Appeal and Review § 104; Municipal, County, School, and State Tort Liability § 651.**

2. **Constitutional Law § 17 (NCI3d); State § 4 (NCI3d) — civil rights action against UNC and ASU — sovereign immunity**

     Plaintiff's 42 U.S.C. § 1983 action against the University of North Carolina and Appalachian State University based

CORUM v. UNIVERSITY OF NORTH CAROLINA

[97 N.C. App. 527 (1990)]

upon an alleged violation of his constitutional rights by his removal as Dean of Learning Resources at Appalachian State University was barred by the doctrine of sovereign immunity.

**Am Jur 2d, Civil Rights §§ 268, 269.**

3. **Constitutional Law § 17 (NCI3d); State § 4.1 (NCI3d) — civil rights claims — university officials — official capacities — sovereign immunity**

Plaintiff's 42 U.S.C. § 1983 claims for money damages against the President of the University of North Carolina and the Chancellor and a Vice Chancellor of Appalachian State University in their official capacities were barred by the doctrine of sovereign immunity. However, plaintiff's § 1983 claims for prospective injunctive relief against those three defendants in their official capacities were not barred by sovereign immunity.

**Am Jur 2d, Civil Rights §§ 268, 269.**

4. **Constitutional Law § 17 (NCI3d); Public Officers § 9 (NCI3d) — civil rights claims — violation of free speech — university officials — individual capacities — qualified privilege**

Summary judgment was properly entered in favor of the Chancellor and a Vice Chancellor of Appalachian State University on the ground of qualified privilege in plaintiff's 42 U.S.C. § 1983 claims to recover monetary damages from them in their individual capacities based upon allegations that his constitutional right to free speech was violated when he was removed as Dean of Learning Resources at Appalachian State University because of statements he made at a staff meeting in which he proposed an alternative to an announced plan for the relocation of a collection of books, manuscripts and artifacts, even if it is assumed that the relocation of the collection was an issue of public interest and that plaintiff was removed to prevent him from raising public concerns about the move rather than for insubordination as defendants assert, where it is apparent that when defendants acted they were not violating a "clearly established" right of which a reasonable person would have known.

**Am Jur 2d, Civil Rights § 19; Colleges and Universities §§ 39, 41; Public Officers and Employees § 359.**

5. **Public Officers § 9 (NCI3d); State § 4.1 (NCI3d) — violation of state constitutional right — university officials — official capacities — sovereign immunity**

   The doctrine of sovereign immunity barred plaintiff's claims for money damages against the University of North Carolina, Appalachian State University, and the President of the University of North Carolina, the Chancellor of Appalachian State University and a Vice Chancellor of Appalachian State University in their official capacities based on alleged violations of plaintiff's right to free speech guaranteed by the N. C. Constitution. Art. I, §§ 14, 19, and 35 of the N. C. Constitution.

   **Am Jur 2d, Civil Rights § 19; Colleges and Universities §§ 39, 41; Public Officers and Employees § 359.**

6. **Public Officers § 9 (NCI3d); State § 4.1 (NCI3d) — violation of state constitutional right — university officials — individual capacities — no immunity**

   The Chancellor and a Vice Chancellor of Appalachian State University did not have immunity from plaintiff's claim against them for money damages in their individual capacities based on allegations that they violated plaintiff's right to free speech under the N. C. Constitution and thus acted outside the scope of their duties in removing plaintiff as Dean of Learning Resources at Appalachian State University.

   **Am Jur 2d, Civil Rights § 19; Colleges and Universities §§ 39, 41; Public Officers and Employees § 359.**

   Judge GREENE concurring in part and dissenting in part.

APPEAL by defendants from order entered 21 October 1988 by *Judge Marvin K. Gray* in WATAUGA County Superior Court. Heard in the Court of Appeals 13 September 1989.

This is a civil action in which plaintiff seeks injunctive relief and compensatory damages from defendants for allegedly violating his constitutionally guaranteed right to freedom of speech in relieving him of his duties as Dean of Learning Resources at Appalachian State University. Defendants moved for summary judgment based on various legal theories including sovereign immunity and qualified immunity. After hearing arguments of counsel and reviewing documents submitted, the trial court entered an order denying

**CORUM v. UNIVERSITY OF NORTH CAROLINA**

[97 N.C. App. 527 (1990)]

defendants' motion for summary judgment. From this order, defendants appealed in apt time.

*Attorney General Lacy H. Thornburg, by Assistant Attorneys General Laura E. Crumpler and Thomas J. Ziko, for defendant-appellants.*

*Ferguson, Stein, Watt, Wallas, Adkins & Gresham, P.A., by John W. Gresham, for plaintiff-appellee.*

JOHNSON, Judge.

Viewing the evidence in the light most favorable to plaintiff (the nonmoving party) as we are required to do, the evidence tends to show the following: For approximately fourteen years prior to June of 1984, plaintiff, Dr. Alvis Corum, held the position of Dean of Learning Resources at Appalachian State University ("ASU"). His duties included supervision of a diversified collection of books, manuscripts, and artifacts known as the Appalachian Collection (the "Collection"). In 1983, various ASU administrators began discussing the possibility of relocating the Collection from its present location in Dougherty Library because of the need to use that space for other purposes. The move was the subject of faculty debate and received attention in the campus newspaper. ASU Vice Chancellor for Academic Affairs Harvey Durham, a defendant in this action, was ultimately responsible for deciding where the Collection would be housed. Plaintiff, along with some other persons involved, felt strongly that the Collection should not be split in two, with the artifacts being separated from the written materials. He expressed this view to defendant Durham on occasion. During a meeting on 21 June 1984, defendant Durham informed plaintiff that the Collection would be moved immediately to University Hall and that responsibility for the Collection would be transferred to another department.

Plaintiff accepted the decision and set up a meeting, as requested by defendant Durham, to work out details of the move. This meeting, which occurred on 25 June, was attended by plaintiff, two ASU librarians, and Dr. Clinton Parker, Associate Vice Chancellor of Academic Affairs who attended as defendant Durham's representative.

Dr. Parker announced at the meeting that the artifacts and written materials would be moved to two separate ASU locations.

CORUM v. UNIVERSITY OF NORTH CAROLINA

[97 N.C. App. 527 (1990)]

The next day a second meeting was held. Exactly what took place at this meeting is somewhat in dispute. It appears, however, that plaintiff proposed an alternative relocation plan in which the entire Collection would be housed in one location. Dr. Parker stated that he did not have the authority to entertain an alternative proposal, but agreed to relay the plan to defendant Durham.

Dr. Parker relayed the proposal to defendant Durham by telephone that evening. The following morning defendant Durham removed plaintiff from his position as Dean of Learning Resources. Plaintiff retained his position as a tenured faculty member.

[1] Before turning to the merits of this case, we are obliged to address a threshold issue not raised in the briefs of either party, namely, the appealability of the denial of a summary judgment motion. Generally, the denial of summary judgment does not affect a substantial right and is not appealable. *Hill v. Smith*, 38 N.C. App. 625, 248 S.E.2d 455 (1978); *Oil Co. v. Smith*, 34 N.C. App. 324, 237 S.E.2d 882 (1977). In the instant case, however, we hold that the denial of summary judgment affected a substantial right and is subject to review. We reach this conclusion in light of the holding of the United States Supreme Court in *Mitchell v. Forsyth*, 472 U.S. 511, 86 L.Ed.2d 411 (1985), a case in which the defendant federal official's summary judgment motions, on the grounds of absolute and qualified immunity, had been denied in District Court. In *Mitchell*, the Supreme Court held that "denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." 472 U.S. at 525, 86 L.Ed.2d at 424 (citations omitted). Similarly, the Court concluded that denial of a public official's claim of qualified immunity from suit, to the extent that it turns on the legal questions of whether the conduct complained of violated "clearly established law" (a standard set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 73 L.Ed.2d 396 (1982)), is also appealable as a "final decision" within the meaning of 28 U.S.C. sec. 1291. In so holding, the Court stated that

> entitlement [to qualified immunity] is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. Accordingly, the reasoning that underlies the immediate appealability of an order denying absolute im-

munity indicates to us that the denial of qualified immunity should be similarly appealable: in each case, the district court's decision is effectively unreviewable on appeal from a final judgment.

An appealable interlocutory decision must satisfy two additional criteria: it must "conclusively determine the disputed question," *Coopers & Lybrand v. Livesay*, 437 US 463, 468, 57 LEd2d 351, 98 S.Ct 2454 (1978), and that question must involve a "clai[m] of right separable from, and collateral to, rights asserted in the action," [*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 93 L.Ed. 1528, 69 S.Ct. 1221 (1949).] The denial of a defendant's motion for dismissal or summary judgment on the ground of qualified immunity easily meets these requirements.

472 U.S. at 526-27, 86 L.Ed.2d at 425-26.

In the case *sub judice*, the defendants advance a substantial claim of absolute immunity as well as qualified immunity as grounds for their summary judgment motion. Further, the qualified immunity argument turns on the issue of whether "clearly established law" has been violated. *Harlow, supra*. In accord with *Mitchell v. Forsyth*, these contentions, if successful, entitle defendants to "immunity from suit rather than a mere defense to liability." *Mitchell, supra*. They could not, therefore, be vindicated after a trial and are appealable at this stage. We do not find it distinguishable that the defendants in the instant case are asserting state rather than federal immunities. We therefore hold that denial of defendants' summary judgment motion on the grounds of sovereign and qualified immunity is immediately appealable.

We first address defendants' assignment of error that the trial court erred in denying their summary judgment motion on grounds of sovereign immunity. Plaintiff's complaint alleges that defendants violated 42 U.S.C. sec. 1983 and that they violated plaintiff's right to freedom of speech as guaranteed by the North Carolina Constitution. In addition to defendants UNC and ASU, named in plaintiff's complaint, defendant Spangler has been sued in his official capacity only, while defendants Thomas and Durham have been sued in both their official and individual capacities.

We find that many of the issues raised in this assignment of error have previously been addressed by this Court in *Truesdale*

CORUM v. UNIVERSITY OF NORTH CAROLINA

[97 N.C. App. 527 (1990)]

*v. University of North Carolina,* 91 N.C. App. 186, 371 S.E.2d 503 (1988), *disc. rev. denied,* 323 N.C. 706, 377 S.E.2d 229 (1989), and we are bound by the holding of *Truesdale.*

[2] The doctrine of sovereign immunity prevents the State or its agencies from being sued without its consent. *Id.* The *Truesdale* Court observed that G.S. sec. 116-3 allows UNC and its constituent institutions to sue and be sued, but only as specifically provided by law. It further concluded that the action brought pursuant to 42 U.S.C. sec. 1983 against UNC and Winston-Salem State University was barred by the doctrine of sovereign immunity. We find this holding applicable to the facts of the instant case and hold that the trial court erred in denying defendants' motion for summary judgment as to defendants UNC and ASU regarding the 42 U.S.C. sec. 1983 cause of action.

We are unpersuaded that the case *sub judice* is controlled by *Smith v. State,* 289 N.C. 303, 222 S.E.2d 412 (1976), in which our Supreme Court abolished the defense of sovereign immunity in breach of contract actions. Plaintiff's action is based upon defendants' alleged violations of his constitutional rights. Plaintiff's complaint makes no reference to any employment contract or allegation that one was breached. We do not believe that statements in plaintiff's brief that he served as Dean pursuant to a contract is sufficient to bring this case under the rule of *Smith v. State* when the action is clearly based on alleged constitutional violations and plaintiff's complaint makes no mention of a contract.

[3] We turn now to the issue of whether plaintiff's claim for monetary damages, including back pay, against *individual* defendants Spangler, Thomas and Durham, named in their *official capacities,* is barred by sovereign immunity. Again, pursuant to *Truesdale, supra,* we hold that this action is barred. The rationale for this is that an action against a State employee in his official capacity for monetary damages would actually be an award against the State since the award would be paid from the State treasury. *Insurance Co. v. Unemployment Compensation Com.,* 217 N.C. 495, 8 S.E.2d 619 (1940); *Truesdale, supra,* at 193, 371 S.E.2d at 507.

As to these same three defendants in their official capacities, however, plaintiff's section 1983 claim, as it relates to prospective injunctive relief, is not barred by sovereign immunity. *Id.* at 194-95, 371 S.E.2d at 508. In this situation, sovereign immunity is preempted by federal law, *Felder v. Casey,* 487 U.S. 131, 101 L.Ed.2d

123 (1988), so that the outcomes of section 1983 actions will not vary predictably with whether the action was brought in state or federal court. *Id.* This issue is more fully treated in *Truesdale* and need not be repeated here.

**[4]** We turn now to the issue of denial of summary judgment concerning monetary awards against defendants Thomas and Durham named in their individual capacities. It is recognized that governmental officials sued in their individual capacities under section 1983 may be liable for damages. *Kentucky v. Graham*, 473 U.S. 159, 87 L.Ed.2d 114 (1985). Such officials may, however, raise the defense of *qualified immunity. Harlow v. Fitzgerald, supra.* The United States Supreme Court has stated that

> government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. [Citations omitted.]
>
> . . . On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was *clearly established* at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Id.* at 818, 73 L.Ed.2d at 410-11 (emphasis added).

The Court has further described a "clearly established" right by stating that

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see *Mitchell [v. Forsyth]*, 472 U.S. 511, 535 n. 12, 86 L.Ed.2d 411, 105 S. Ct. 2806; *but it is to say that in light of pre-existing law the unlawfulness must be apparent.*

*Anderson v. Creighton*, 483 U.S. 635, 640, 97 L.Ed.2d 523, 531 (1987) (emphasis added).

## CORUM v. UNIVERSITY OF NORTH CAROLINA

[97 N.C. App. 527 (1990)]

In the case *sub judice*, plaintiff alleges that he was relieved of his duties as Dean because of the statements he made at the 26 June 1984 staff meeting in which he proposed an alternative relocation plan. He asserts that this discharge violated his guaranteed right of free speech. To determine whether defendants violated a "clearly established" right of which a reasonable person would have known, we examine the substantive law applicable to plaintiff's claim. The Supreme Court has set forth the necessary elements for a state employee's section 1983 action for violation of freedom of speech in *Connick v. Myers*, 461 U.S. 138, 75 L.Ed.2d 708 (1983). In that case, the Court stated that the first issue is whether "an employee's speech addresses a matter of public concern" and this must be "determined by the content, form, and context" of the statement in question. *Id.* at 147, 75 L.Ed.2d at 720. If the speech does comment on a matter of public concern, then the court must balance the employee's interest as a citizen in commenting on the public issue against "the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Id.* at 150, 75 L.Ed.2d at 722; *Pickering v. Board of Education*, 391 U.S. 563, 20 L.Ed.2d 811 (1968).

It is unnecessary to the disposition of the qualified immunity issue before us to fully apply the criteria of *Connick* to the instant case and we decline to do so. We shall, however, examine the process sufficiently to determine whether qualified immunity exists.

On review of denial of defendants' summary judgment motion, we are obliged to view the record in the light most favorable to the nonmoving party, the plaintiff, giving him the benefit of all reasonable inferences. *Bradshaw v. McElroy*, 62 N.C. App. 515, 302 S.E.2d 908 (1983). In doing this, we conclude, for purposes of evaluating the summary judgment motion only, that the relocation of the Appalachian Collection was an issue of some public interest to the local community. Further, for purposes of this analysis only, we may resolve the conflicting allegations of the parties and conclude that plaintiff was discharged in order to prevent him from raising public concerns about the move, rather than for insubordination as defendants assert.

Upon concluding that plaintiff's comments addressed a public issue, we turn to the second prong of the *Connick* test, whether plaintiff's interest in commenting on the relocation of the Collection is outweighed by the State's interest in the efficient provision

of services to the public. The Court in *Connick* listed several factors to be considered in balancing the complex interests in a given case. These include the manner, time and place in which the statement is made; the context in which the dispute arose; and whether the employee's speech could reasonably be viewed by the supervisor as threatening his authority to run the office. *Connick, supra.* In the instant case, plaintiff's statement was made in a small faculty meeting rather than in a forum in which the general public would hear his statement. It was also made after plans for the move had been going on for months and the move itself was imminent. On the other hand, plaintiff asserts that the final decision to divide the Collection had purposely been concealed until the eleventh hour in hopes of avoiding the type of statement plaintiff made. In fact, a memo circulated by defendant Durham just prior to the announcement (believed by plaintiff to be a final decision) stated the Collection would remain intact.

These and other factors must weigh in the balance to determine whether plaintiff's right to speak out was outweighed by ASU's need for efficient provision of service to the public. Although we decline to reach a final balance of interests under *Connick, supra*, we believe the recitation of some of the factors involved shows the complexity of balancing the interests to determine whether plaintiff's rights were violated. It is apparent to us that when defendants acted they were not violating a "clearly established" right of which a reasonable person would have known. Therefore, the trial court erred in denying defendants' motion for summary judgment as it concerns possible monetary awards against defendants Thomas and Durham named in their individual capacities pursuant to 42 U.S.C. sec. 1983.

[5] Last, we address the denial of defendants' summary judgment motion as it concerns plaintiff's claims for violations of his right to free speech as protected by Article I, sections 14, 19 and 35 of the North Carolina Constitution. Defendants contend that this action is barred by sovereign immunity. Our Supreme Court found it unnecessary to reach a state constitutional issue in the recent case of *Harwood v. Johnson*, 326 N.C. 231, 388 S.E.2d 439 (1990), in which the plaintiff had stated a claim for relief under 42 U.S.C. sec. 1983. We believe the case before us is distinguishable from *Harwood* since plaintiff Corum has at least the possibility of obtaining a different type of relief, namely monetary damages, under

our State Constitution than he may be entitled to under our analysis of his section 1983 claim.

The doctrine of sovereign immunity—that the State may not be sued without its consent—is firmly rooted in the jurisprudence of North Carolina. *Harwood v. Johnson, supra; Orange County v. Heath*, 282 N.C. 292, 192 S.E.2d 308 (1972); *Electric Co. v. Turner*, 275 N.C. 493, 168 S.E.2d 385 (1969); *Schloss v. Highway Commission*, 230 N.C. 489, 53 S.E.2d 517 (1949). Also, an action brought against individual state officers or employees in their official capacities is considered to be an action against the State for purposes of applying the doctrine of sovereign immunity. *Insurance Co. v. Unemployment Compensation Com., supra*. Therefore, we must conclude that plaintiff can seek no relief of any kind from UNC, ASU, or the three individual defendants named in their official capacities, and we reverse that part of the trial court order.

[6] We turn now to the question of whether the two defendants named in their individual capacities are protected from plaintiff's state action for monetary damages.

[Our Supreme] Court said in *Smith v. Hefner*, 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952), "It is settled law in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto. The rule in such cases is that an official may not be held liable *unless it be alleged and proved* that his act, or failure to act, was corrupt or malicious (cites omitted), or that he acted outside of and beyond the scope of his duties." (Emphasis added.) As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability. *Carpenter v. Atlanta & C.A.L. Ry.*, 184 N.C. 400, 406, 114 S.E. 693, 696 (1922). As to the personal liability of a governor, see 28 Am. Jur. 2d *Governor* [sec.] 11 (1968).

*Smith v. State, supra*, at 331, 222 S.E.2d at 430; *see also Mazzucco v. Board of Medical Examiners*, 31 N.C. App. 47, 228 S.E.2d 529, *disc. rev. denied*, 291 N.C. 323, 230 S.E.2d 676 (1976).

CORUM v. UNIVERSITY OF NORTH CAROLINA

[97 N.C. App. 527 (1990)]

In the instant case, plaintiff has alleged and come forward with some evidence that the two defendants acted in violation of law, and therefore outside the scope of their duties in discharging plaintiff. The defendants have failed to disprove plaintiff's claim as a matter of law. We express no opinion whatsoever as to whose version of events and motivation is correct. However, viewing the record in the light most favorable to plaintiff as we must in this posture, we cannot say, as a matter of law, that plaintiff would be unable at trial to prove a set of facts which would entitle him to relief from defendants. We therefore hold that the two individually named defendants are not immune from a suit for monetary damages.

In summary, we hold that concerning plaintiff's 42 U.S.C. sec. 1983 claim, the trial court erred in denying defendants' summary judgment motion except as it pertained to plaintiff's claim against individual defendants Spangler, Thomas, and Durham named in their official capacities, for prospective injunctive relief only. As to plaintiff's State Constitutional claim, the trial court erred in failing to grant defendants' motion as to UNC, ASU, and the three individual defendants in their official capacities as to all relief. The motion was properly denied as it concerned plaintiff's claims for monetary damages against the two individually named defendants for violation of plaintiff's State Constitutional rights.

Affirmed in part; reversed in part and remanded.

Judge EAGLES concurs.

Judge GREENE concurs in part and dissents in part.

Judge GREENE concurring in part and dissenting in part.

On the § 1983 claims, for the reasons hereafter asserted in Part I, I agree with the majority that plaintiff should be allowed to proceed to trial only on his claims against Spangler, Thomas and Durham in their official capacities for prospective injunctive relief and that summary judgment should be entered for defendants on the remaining § 1983 claims. On the state constitutional claims, I agree with the majority that the plaintiff should be allowed to proceed to trial on his claims against Thomas and Durham in their individual capacities for monetary relief. With the exception of the plaintiff's claims against Spangler, Thomas and Durham in their official capacities for prospective injunctive relief, I also agree with

CORUM v. UNIVERSITY OF NORTH CAROLINA

[97 N.C. App. 527 (1990)]

the majority that summary judgment should be entered for defendants on the remaining claims asserted pursuant to the state constitution. As to the claims against Spangler, Thomas and Durham in their official capacities for prospective injunctive relief, I disagree with the majority and am of the opinion that those claims should not be dismissed for the reasons hereafter asserted in Part II.

I

Section 1983 Claims

The § 1983 action against UNC and Appalachian State University, and the § 1983 action against Spangler, Thomas and Durham in their official capacities for monetary relief, must be dismissed as they are not "persons" within the meaning of § 1983 and therefore are not subject to § 1983 liability. *Will v. Michigan Dept. of State Police*, 491 U.S. ---, 105 L.Ed.2d 45, 58 (1989). However, Spangler, Thomas and Durham, sued in their official capacities, are "persons" within the meaning of § 1983 to the extent that injunctive relief is sought, since "official-capacity actions for prospective relief are not treated as actions against the state." *Will*, 491 U.S. at ---, 105 L.Ed.2d at 58, n.10. Furthermore, the § 1983 state action against Spangler, Thomas and Durham in their official capacities for injunctive relief is not barred by either the Eleventh Amendment, S. Steinglass, *Litigation in State Courts* § 15.3(b), at 15-30 (Eleventh Amendment is "a subject matter jurisdictional limitation on the power of the *federal courts*" (emphasis added) ) or by state sovereign immunity. *Martinez v. California*, 444 U.S. 277, 283, 62 L.Ed.2d 481, 488, *rehearing denied*, 445 U.S. 920, 63 L.Ed.2d 606 (1980) (state created immunities cannot be used to limit liability in § 1983 actions filed in state courts).

A § 1983 action against Thomas and Durham in their individual capacities could be asserted for monetary damages, subject however to their qualified immunity that was pled by the defendants, as defined in *Harlow v. Fitzgerald*, 457 U.S. 800, 73 L.Ed.2d 396 (1982). While *Harlow* arose from a § 1983 action filed in federal court, that same standard should nonetheless apply in a § 1983 action filed in state court. To hold otherwise would result in the possibility of fifty different standards for qualified immunity for § 1983 actions filed in state courts. *See Felder v. Casey*, 487 U.S. 131, 101 L.Ed.2d 123, 138 (1988) ("state law is pre-empted when the § 1983 action is brought in state court," as outcome should not depend on whether action is filed in state or federal court). The *Harlow* standard is

one of "objective reasonableness." *Harlow*, 457 U.S. at 818, 73 L.Ed.2d at 410. The official conduct is immunized if the "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* While the plaintiff's constitutional right of free speech, allegedly infringed upon by the defendants, is in a general sense "clearly established," that right of free speech, requiring application of a balancing test, *Connick v. Myers*, 461 U.S. 138, 150-51, 75 L.Ed.2d 708, 722 (1983), is not "clearly established" in a "more particularized . . . sense" as required by *Anderson v. Creighton*, 483 U.S. 635, 640, 97 L.Ed.2d 523, 531 (1987).

## II

### N.C. Constitutional Claims

In plaintiff's second claim, he asserts a private right of action under the North Carolina Constitution. While North Carolina does not have an enabling statute similar to § 1983 authorizing remedies for the violation of the North Carolina Constitution by state officials acting under color of state law, such private actions are generally recognized as a constitutional tort giving rise to common law remedies. *See Bevins v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 29 L.Ed.2d 619 (1971); *Figueroa v. State*, 604 P.2d 1198 (Hawaii 1988). To deny such a claim would deny the plaintiff the "very essence of civil liberty" which entitles "every individual to claim the protection of the laws, whenever he receives an injury." *Marbury v. Madison*, 5 U.S. 137, 163, 2 L.Ed. 60, 69 (1803). However, such private actions for monetary relief against the state or its officials acting in their official capacities are barred by sovereign immunity. *See Lewis v. White*, 287 N.C. 625, 642-43, 216 S.E.2d 134, 145-46 (1975). Nonetheless, in this *Bevins*-type action, which is similar to § 1983 actions, injunctive relief is allowed against state officials sued in their official capacities who, acting under color of state law, "invade the personal or property rights of citizens *in disregard of law*." *Id.* To hold otherwise would permit unlawful action by state officials and relegate the plaintiff to the possibility of only a monetary judgment against an individual. *See Lewis*, 287 N.C. at 644, 216 S.E.2d at 146-47 (injunction permitted to restrain state officials from making illegal diversion of public funds); *Smith v. State*, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976) (monetary relief available against officials acting under color of state law

AMERICAN ALUMINUM PRODUCTS v. POLLARD

[97 N.C. App. 541 (1990)]

and sued in their individual capacity if acting with corrupt purposes, with malice or outside of or beyond the scope of their duties).

## III

As our Rules of Civil Procedure permit parties to assert inconsistent and alternative pleadings and claims, plaintiff should not be required to elect at this stage of the proceeding between his § 1983 claims and his state constitutional claims, even to the extent that they seek the same remedies. *See Alpar v. Weyerhaeuser Co.*, 20 N.C. App. 340, 344, 201 S.E.2d 503, 506, *cert. denied*, 285 N.C. 85, 203 S.E.2d 57 (1974); *see also* N.C.G.S. § 1A-1, Rule 18(a) ("A party asserting a claim for relief as an original claim . . . may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party."); N.C.G.S. § 1A-1, Rule 8(e)(2) (1983) (alternative and inconsistent pleadings permitted).