RAY R. BROYHILL v. AYCOCK & SPENCE, A NORTH CAROLINA PARTNERSHIP; AND W. MARK SPENCE, INDIVIDUALLY

No. 901SC552

(Filed 2 April 1991)

1. **Attorneys at Law § 44 (NCI4th) — legal malpractice — existence of attorney-client relationship — summary judgment improper**

   The trial court in an action for legal malpractice erred in entering summary judgment for defendant attorneys where there existed a genuine issue of material fact as to whether there was a contract of employment between plaintiff and defendants such that defendants represented plaintiff in the real estate transaction at issue.

   **Am Jur 2d, Attorneys at Law § 197.**

2. **Appeal and Error § 447 (NCI4th) — non-client third-party liability — issue first raised on appeal**

   In a legal malpractice action, plaintiff was not entitled to argue for the first time on appeal a theory of non-client third-party liability based upon nonprivity of contract between plaintiff and defendants.

   **Am Jur 2d, Appeal and Error §§ 545, 546, 567; Attorneys at Law § 232.**

   Judge PHILLIPS concurring in part and dissenting in part.

APPEAL by plaintiff from order entered 29 March 1990 in DARE County Superior Court by *Judge Thomas S. Watts.* Heard in the Court of Appeals 5 December 1990.

*Jeffrey L. Miller for plaintiff-appellant.*

*Hornthal, Riley, Ellis & Maland, by M. H. Hood Ellis, for defendant-appellees.*

GREENE, Judge.

Plaintiff, Ray R. Broyhill, filed a complaint alleging attorney malpractice against defendant law partnership, Aycock & Spence, and against defendant, W. Mark Spence, on 10 May 1988. Plaintiff appeals from a summary judgment allowed for defendants on 29 March 1990.

## BROYHILL v. AYCOCK & SPENCE

[102 N.C. App. 382 (1991)]

Plaintiff's complaint alleges in part:

### FACTUAL ALLEGATIONS

#### 6.

The plaintiff and the defendants Partnership and Spence contracted on a number of occasions for Spence and for the Partnership to represent the plaintiff in various legal matters, particularly real estate transactions.

#### 7.

On or about February 4, 1985, the plaintiff, as seller, and Sea Isle Realty, Inc., and Kenneth Z. Smith, as purchasers, entered into an offer to purchase certain real estate described in said contract as "Block 16, Lots 1 through 27, Kill Devil Hills, Section 1; Being the same tract of land formerly owned by C. B. Morrisette, Jr.," for a price of $496,000.00. A copy of said offer to purchase is attached hereto and incorporated herein by reference as if fully set out as Exhibit "A."

#### 8.

The plaintiff employed the defendants Partnership and Spence to represent his interests in connection with the closing of the above-referenced contract and the defendants Partnership and Spence agreed to represent the plaintiff in a competent and professional manner commensurate with accepted standards for licensed attorneys in North Carolina handling real estate transactions.

#### 9.

The defendants Partnership and Spence, agreed *inter alia*, to prepare a promissory note and deed of trust covering the subject property pursuant to the terms of the attached Exhibit "A," offer to purchase.

#### 10.

A legal description of the property which is the subject of Exhibit "A" is:

[Lots 1 through 27], Block 16, Section 1, of the subdivision known as "Kill Devil Hills," . . . .

11.

The defendants Partnership and Spence failed, without any justification whatsoever, to include Lots 1, 6 and 7 of the above-described property in the deed of trust which was recorded by the defendants at Book 397, page 570, Dare County Registry, on or about April 5, 1985. This omission lessened the security for the monies owed to the plaintiff.

12.

The plaintiff, upon realizing the negligent omission of said lots by the defendants Partnership and Spence, immediately contacted both defendants and made them aware of their negligent breach by virtue of said omission.

13.

Despite repeated demands by the plaintiff that the documents in question be corrected by the defendants Partnership and Spence, said documents have not been corrected by either defendant.

14.

The negligent omission complained of above has caused monetary damages to the plaintiff which, despite demands, have not been recompensed by either the defendant Partnership or the defendant Spence.

. . . .

FIRST COUNT (NEGLIGENCE)

16.

The plaintiff repeats and realleges each and every allegation hereinabove set out.

17.

When the plaintiff employed the defendants Partnership and Spence, they undertook and agreed to represent the plaintiff in a proper, skillful and diligent manner.

18.

The conduct of the defendants Partnership and Spence was not in accordance with the standard of practice of compe-

**BROYHILL v. AYCOCK & SPENCE**

[102 N.C. App. 382 (1991)]

tent attorneys licensed to practice in the State of North Carolina in the handling of real estate transactions where such defendants were holding themselves out as skillful attorneys in the practice of real estate law.

19.

The plaintiff, as a direct and proximate result of the negligence of the defendants, has incurred legal expenses in the filing of this action, as well as in the filing of an action in the nature of a reformation of a deed of trust. Since these expenses were incurred solely because of the defendants' negligence, the defendants should be fully liable for same.

20.

As a direct result of the negligence of the defendants Partnership and Spence, the plaintiff has suffered damages in excess of $10,000.00 pursuant to rule 8(a)(2) of the North Carolina Rules of Civil Procedure.

SECOND COUNT (BREACH OF CONTRACT)

21.

The plaintiff repeats and realleges each and every allegation as set out above.

22.

The defendants Partnership and Spence entered into a contract with the plaintiff to perform professional legal services for him in connection with the above-referenced real [e]state transaction.

23.

The plaintiff has, at all times, performed all the agreements in the contract on his part at the time and in the manner specified.

24.

The defendants Partnership and Spence failed, neglected and refused to perform the conditions of the contract as hereinbefore alleged and as a result, the plaintiff has been damaged.

25.

The defendants Partnership and Spence breached the contract and refused to render professional services without reasonable cause. Said breach consisted of the negligent omission of three (3) lots from the deed of trust and the refusal or inability to correct said omission.

. . . .

Defendants' answer denied all pertinent allegations of the complaint, particularly those contending that plaintiff was represented by defendants.

During the summary judgment hearing held 26 March 1990, defendants introduced in support of their motion both plaintiff's and defendant Spence's depositions. Following are relevant excerpts from defendant Spence's deposition:

Q All right. Now, I'm sure you've heard the testimony of Mr. Broyhill concerning these—not the incident situation but the six or seven closings that you've been involved in prior to the incident one wherein Mr. Broyhill was selling individual lots or just one or two lots at a time to Ken Smith; is that correct?

A I heard him testify about them, yes.

Q Okay. Did you consider yourself to be acting as attorney for Ken Smith, Ray Broyhill or both of them at the time of those transactions?

A I considered myself to be representing Ken Smith or Sea Isle Realty, Incorporated, whoever the party was.

Q All right. So I take it then you did not consider yourself to be representing Ray Broyhill in any manner?

A Never did. At the time. Still don't. I was told that by Mr. Broyhill.

Q When were you told that?

A The time I recall most distinctly is the time where I forwarded [a] proposed closing statement . . . and when he got the proposed closing statement, he called me on the phone and said he did not pay attorney's fees when he was the seller in a transaction. He represented himself.

Q Did he tell you that he had an agreement with Ken Smith where Ken Smith would pay the attorney's fees for the transaction?

A No.

Q He never did tell you that?

A No, he did not.

Now, in that transaction, as I recall it, having been refreshed by the documents you handed up, Ken Smith paid a seller's attorney's fee. Having once been put on notice that I was not to represent Mr. Broyhill, a seller's fee was not charged thereafter in any of the transactions that have been testified about.

Plaintiff offered his affidavit which states in part:

3. In the past and before the sale of the land concerned in this lawsuit, I have sold lots in the Kill Devil Hills area to Mr. Ken Smith. He was the realtor when I bought the lots. He wanted to develop them, so I sold him the lots one or two at the time. These sales were done in my absence. Mr. Smith and I used Mark Spence as our attorney to handle these transactions. Mr. Spence did all of the legal work which I needed to sell the lots to Mr. Smith. He prepared legal documents for me in these sales transactions and for the purpose of meeting my legal obligations and needs in the matters. I considered him my attorney in the matters, and I wrote to him or communicated with him by phone as to his services on my behalf. I paid Mr. Spence for his services by reimbursing Ken Smith for attorney's fees and costs. Since I was not present for the closings of the sale, I arranged for Mr. Smith to pay Mr. Spence's fees in my behalf and I then reimbursed Mr. Smith.

. . . .

5. Mr. Spence was the attorney employed by me and Ken Smith to represent us in closing the sale of the lots to Sea Isle Realty. He was representing both of us. Mr. Spence prepared legal documents for me and which were supposed to protect my interests in the sales transaction. Mr. Spence was my trustee under the deed of trust involved in the transaction, and I relied upon him as my attorney to see that all of my paperwork

was properly prepared and that my interests were looked out for. I was not going to attend the closing and it was therefore important that my attorney attend to the transaction at closing.

Things had gone alright [sic] in my previous dealings with Mr. Spence representing my interests in closings with Mr. Smith, so I had no reason to change the relationship in this sale. I wrote to Mr. Spence and I spoke with him by phone about the terms of the sale and about his services. When there was a problem in the payoff of my mortgage in the sale, I used Mr. Spence to get things straight. I relied upon Mr. Spence to do whatever was necessary on my behalf to close the sale. He had done a good job for me up until then and, based upon our discussions, I felt that he was going to take care of my interests in my absence as he had in the past. I did not employ any other attorney to represent me, nor did I appear at the closing, because Mr. Spence was employed in my behalf and I relied upon his assurances and services.

6. After the sale was closed and the papers were recorded in Dare County, Mr. Spence sent me my papers. I noticed that the deed of trust did not include three (3) lots which were supposed to be listed as part of the real property pledged to me in the sale. I got in touch with Mr. Spence and told him of this mistake. He said he would take care of it. Mr. Spence had prepared the deed and deed of trust in this sale for my benefit and as my attorney. He made a mistake in failing to include the three (3) lots in the papers and I called him on it. He told me he would check into it and take care of it. At no time had I agreed to release any lots for the $50,000 down payment at the time of the closing. The written contract made it clear that the twenty-seven (27) lots were to be released for $16,518.51 each after the closing. This release amount was determined by dividing the amount I was financing, $446,000 by the twenty-seven (27) lots financed which gave us a release value of $16,518.51 per lot. The $50,000 downpayment was not included in determining the release of any lots and was not paid for the release of any lots.

7. At no time did Mr. Spence notify me that he did not represent my interests in the sales transaction, that he only represented Mr. Smith or Sea Isle Realty's interest, or that

I should secure separate and timely representation of my interests prior to or at the closing of the sales transaction. Mr. Spence never stated to me anything about who he represented or the scope of his representation in the sales transaction at issue in this lawsuit.

---

The issues are: (I) whether the trial court erred in granting summary judgment in that there is a genuine issue of material fact as to whether an attorney-client relationship existed; and (II) whether plaintiff is entitled to argue on appeal a theory of non-client third-party liability based upon nonprivity of contract between plaintiff and defendant.

I

[1]   Plaintiff first contends the trial court erred in granting defendants' motion for summary judgment in that there exists a genuine issue of material fact as to whether there was a contract of employment between plaintiff and defendants such that defendants represented plaintiff in the real estate transaction at issue.

Our Rules of Civil Procedure provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c) (1990). The burden is on the movant to show there is no genuine issue of material fact and the non-movant only has to refute any showing that his case is fatally deficient. *Cheek v. Poole,* 98 N.C. App. 158, 162, 390 S.E.2d 455, 458, *disc. rev. denied,* 327 N.C. 137, 394 S.E.2d 169 (1990). All inferences are resolved against the movant and the facts asserted by the non-movant must be accepted as true. *Vernon, Vernon, Wooten, Browne & Andrews, P.A. v. Miller,* 73 N.C. App. 295, 298, 326 S.E.2d 316, 319 (1985). The trial court's role in ruling on a summary judgment motion is to determine whether a genuine issue of material fact exists, but not to decide an issue of fact. *Barrow v. Murphrey,* 95 N.C. App. 738, 740, 383 S.E.2d 684, 685 (1989).

In support of their motion for summary judgment, defendants introduced defendant Spence's deposition in which he denied that he had ever represented plaintiff in any transaction and that, at one point, plaintiff claimed to Spence that he represented himself.

BROYHILL v. AYCOCK & SPENCE

[102 N.C. App. 382 (1991)]

Plaintiff, on the other hand, presented his affidavit stating that defendants, and particularly defendant Spence, did represent plaintiff in the transaction at issue. Therefore, a genuine issue of material fact is presented as to whether there was an attorney-client relationship. *See Ives v. Real-Venture, Inc.*, 97 N.C. App. 391, 388 S.E.2d 573, *disc. rev. denied*, 327 N.C. 139, 394 S.E.2d 174 (1990) (genuine issue of material fact existed where third-party defendants presented deposition testimony that they were not retained to conduct title search or purchase title insurance and defendants presented affidavit that third-party defendants were retained for these purposes). We further reject defendants' argument that plaintiff's affidavit shows only an ineffective unilateral attempt to form an attorney-client relationship. This Court has held that an express verbal agreement is not necessary to establish an attorney-client relationship, but such may be implied from the conduct of the parties even in the absence of the payment of fees or the lack of a formal contract. *N.C. State Bar v. Sheffield*, 73 N.C. App. 349, 358, 326 S.E.2d 320, 325, *cert. denied*, 314 N.C. 117, 332 S.E.2d 482, *cert. denied*, 474 U.S. 981, 88 L.Ed.2d 338 (1985). Plaintiff's affidavit states that defendants had represented him in a number of similar transactions, that defendants prepared legal documents for him, that plaintiff wrote to and telephoned defendants to give instructions pertinent to his representation, that plaintiff paid defendants through Ken Smith because plaintiff was not present at closing, that defendant Spence served as plaintiff's trustee under the relevant deed of trust, that plaintiff used defendant Spence to straighten out a problem with plaintiff's mortgage payoff related to the sale at issue, and that defendant Spence said he would take care of correcting the deed of trust. If true, these factual assertions would tend to establish an attorney-client relationship based upon the conduct of the parties.

Accordingly, summary judgment was improper because there is a genuine issue of material fact regarding the existence of an attorney-client relationship.

II

[2] Plaintiff next argues that summary judgment was improper because, even if an attorney-client relationship did not exist, defendants are liable to plaintiff as a non-client third party. Plaintiff contends *United States Leasing v. Miller*, 45 N.C. App. 400, 263 S.E.2d 313, *disc. rev. denied*, 300 N.C. 374, 267 S.E.2d 685 (1980),

**BROYHILL v. AYCOCK & SPENCE**

[102 N.C. App. 382 (1991)]

stands for the proposition that an attorney may be held liable for negligence by a non-client third party in the absence of privity of contract.

While the first count in plaintiff's complaint purports to be a count in negligence, paragraph seventeen, as contained within that count, establishes that plaintiff was pleading the negligent performance of a duty arising from a contract of employment and representation between plaintiff and defendants. Nowhere in the complaint does plaintiff plead a theory of non-client third-party liability. Both the breach of contract and negligence counts, as pled by plaintiff, are based on privity of contract. There is also no indication in the record that plaintiff argued a nonprivity or non-client third-party theory before the trial court at the hearing on summary judgment. Failure to plead or argue a theory of recovery before the trial court precludes the assertion of that theory on appeal. *River Birch Associates v. City of Raleigh*, 326 N.C. 100, 131, 388 S.E.2d 538, 556 (1990) (party could not argue third-party beneficiary theory on appeal where complaint and argument below was based upon direct contract).

Reversed and remanded.

Judge ORR concurs.

Judge PHILLIPS concurs in part and dissents in part.

Judge PHILLIPS concurring in part and dissenting in part.

I agree that the record raises an issue of fact as to defendants' liability under the relationship of attorney and client. I do not agree, however, that the complaint does not adequately allege defendants' liability in the absence of that relationship, as the real basis for defendants' liability is not the attorney-client relationship, but defendants' failure to properly do what they either agreed, were instructed, or undertook to do—namely, draw the deed of trust in accordance with the sale terms.

Leaving aside the attorney-client relationship, the other circumstances alleged—that defendants prepared the deed of trust under an agreement to include all the lots listed in the offer to purchase but without justification failed to include some of them—clearly state an enforceable claim for relief under theories of both

breach of contract and negligence. Shrinking the circumstances alleged even further, the allegation that defendants undertook to draw the deed of trust in accordance with the terms of the sale and without justification failed to do so, also states an enforceable claim since even an unobligated, disinterested volunteer can be liable for improperly performing a service or task undertaken. These claims being inherent in the comprehensive claim alleged and readily discernible from reading the complaint, it was not necessary to label them with a nonprivity or other theory of some kind. For legal rights are based upon circumstances, not theories, and the circumstances alleged, if proven, would entitle plaintiff to recover under either of the so-called theories stated by the majority. Nor is it legally significant that plaintiff did argue this at the hearing, as the sufficiency of a pleading is not determined by argument, but by its content.