KIRK C. AUNE v. UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, DR.
STUART BONDURANT, WILLIAM D. MATTERN, AND EDWIN CAPEL

No. COA94-1350

(Filed 17 October 1995)

1. **Public Officers and Employees § 58 (NCI4th)— whistle-blowing claim—nonreappointment unrelated to whistle-blowing—summary judgment for defendants proper**

The evidence was sufficient to support summary judgment for defendants on plaintiff's whistleblower claim where plaintiff was not reappointed as an associate dean at a state university; defendants presented undisputed evidence that plaintiff's performance was scrutinized in compliance with university policy; defendants' evidence specifically revealed that the final committee review, which recommended that plaintiff not be reappointed, was conducted fairly and without bias; the evidence was that there were questions regarding the adequacy of plaintiff's performance, of which plaintiff had knowledge, even before his whistleblowing to defendants; defendants' evidence revealed that plaintiff's nonappointment was based on his inability to collaborate with others; and plaintiff failed to show that his reports of conflicts of interest and possible misappropriation of state resources were a substantial factor in the nonrenewal of his appointment N.C.G.S. § 126-85.

**Am Jur 2d, Public Officers and Employees §§ 236-239, 261, 262, 288.**

**Pre-emption by workers' compensation statute of employee's remedy under state "whistleblower" statute. 20 ALR5th 677.**

**Pre-emption of wrongful discharge cause of action by civil rights laws. 21 ALR5th 1.**

2. **State § 23 (NCI4th)— emotional distress and misrepresentation—claims barred by sovereign immunity**

Summary judgment for defendant state university administrators on plaintiff's emotional distress and misrepresentation claims was appropriate based on defendants' claims of sovereign immunity, since allegations in the complaint involved acts of defendants performed within the bounds of their official duties and in their capacities as representatives of the state.

AUNE v. UNIVERSITY OF NORTH CAROLINA

[120 N.C. App. 430 (1995)]

**Am Jur 2d, Damages §§ 41, 251-262; Municipal, County, School and State Tort Liability § 70; States, Territories and Dependencies §§ 104-111.**

Appeal by plaintiff from order entered 26 September 1994 in Orange County Superior Court by Judge Anthony M. Brannon. Heard in the Court of Appeals 12 September 1995.

*McSurely & Dorosin, by Mark Dorosin and Alan McSurely, and Levine Stewart & Davis, by John T. Stewart, for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Thomas J. Ziko, for defendant-appellees.*

GREENE, Judge.

Kirk C. Aune (plaintiff) appeals from the trial court's entry of summary judgment in favor of the University of North Carolina at Chapel Hill (University), Dr. Stuart Bondurant (Bondurant), William D. Mattern (Mattern), and Edwin Capel (Capel) (collectively defendants) on plaintiff's "Whistleblower," intentional and/or negligent infliction of emotional distress and misrepresentation claims.

On 7 July 1993, plaintiff filed this action against defendants, alleging that in 1991, while he was employed by the University School of Medicine as the Associate Dean for Information Systems and Director of the Office of Information Systems (OIS), he reported to Mattern (Associate Dean of Academic Affairs) and Bondurant (Dean of the School of Medicine) "the existence of an apparent conflict of interest among some employees of the School of Medicine." In 1992 he reported the "potential conflicts of interest as well as the possible appropriation of state resources by some employees of the School of Medicine for their own private commercial gain" to Capel (University's internal auditor). He further alleges that "the decision to terminate [his] employment . . . was made in retaliation for the aforesaid reports" and in violation of N.C. Gen. Stat. §§ 126-84, -85. Plaintiff also alleged that the defendants "acted willfully, wantonly and intentionally and/or were negligent in their handling of the performance review and [his] attempt to report suspected misbehavior and conflicts of interest" and that he suffered severe emotional distress as a consequence. The plaintiff finally alleged that the University misrepresented "the fairness with which decisions about his continued employment would be made," that Capel and the University misrep-

resented that "an appropriate investigation would be conducted" into his 18 June 1992 report and that Bondurant misrepresented "that there would be no negative repercussions from making a report of suspected misappropriation of state resources." Plaintiff's suit is captioned against Bondurant, Mattern and Capel in both their official and individual capacities.

In support of the defendants' motion for summary judgment they presented an affidavit by Bondurant in which he recalled only one time, "in early 1992, or possibly 1991," that plaintiff asserted the possibility of a conflict of interest among employees of the School of Medicine. After Bondurant had Mattern conduct an investigation, which revealed no conflict, Bondurant told plaintiff, who was not satisfied with the outcome, that he could report his concerns to Capel. Bondurant heard nothing else of plaintiff's complaints and therefore "considered the matter to be resolved." Furthermore, Bondurant did not know of plaintiff's reports to Capel until after the nonrenewal of plaintiff's appointment. In 1992, Bondurant appointed a committee to review plaintiff's performance. Bondurant further states, in his affidavit, that he did not ask Mattern to influence the 1992 review committee's decision, although he did request that Mattern discuss candidates to serve as committee members. Dr. David Ontjes (Ontjes), who served as chair of the 1992 review committee, and another committee member interviewed Mattern, as a witness, before the committee formally convened to hear from witnesses and write its report. During his interview, Mattern expressed his opinion that plaintiff should not be reappointed. Although Ontjes questioned Bondurant regarding the necessity of a review after hearing Mattern's opinion, Bondurant "assured [Ontjes] that a review was quite necessary, and that [he] wanted the committee to conduct an impartial and thorough examination of [plaintiff's] leadership of OIS, on the basis of which [Bondurant] would then make a decision." Bondurant stressed that Mattern's opinion was just one person's and that the committee should consider all sources before making a recommendation. Bondurant gave no indications of his personal views regarding plaintiff to the committee and asked for a thorough and objective review. The 1992 review committee issued a report on 22 April 1993 and "strongly advise[d] that [plaintiff] not be reappointed." In support of its recommendation it determined that plaintiff's style of interaction had decreased his effectiveness, citing specifically the perception that he was rigid and uncompromising and his failure to provide a functional long-term plan or to address the microcomputer evolution.

Bondurant "decided to accept the [c]ommitte's recommendation" and not reappoint the plaintiff.

In Mattern's affidavit in support of the motion, he stated that he only remembers a general statement by plaintiff regarding the conflict of interest charge in the fall of 1991. After plaintiff's mention of a potential problem, Mattern carefully questioned the faculty member involved and was satisfied by the faculty member's explanation that there was no conflict of interest. Mattern reported his satisfaction to plaintiff. Plaintiff never mentioned that conflict issue again. Plaintiff also brought forth a potential conflict of interest held by a programmer, regarding a previous dual employment contract held by the programmer. When Mattern investigated, he determined that the programmer was no longer working on the project which would have given rise to the conflict of interest. Furthermore, Mattern was only limitedly involved in plaintiff's 1992 review. Mattern worked to appoint the committee members, but members to whom plaintiff objected were removed from the committee and the final committee contained no member to which plaintiff did not agree. Mattern also submitted a list of names to the committee of people they might contact, "specifically omitt[ing] . . . people whose views [he] thought were uniformly negative." The undisputed evidence also reveals that the committee had numerous sources from which to collect witnesses, including an open request to anyone interested in the hearing to testify either for or against plaintiff's reappointment. Mattern's only other involvement with the review was his testimony as a witness. Furthermore, Mattern did not know of plaintiff's reports to Capel.

Defendants also presented affidavits from members of the 1992 review committee. Each member gave specific facts establishing the unbiased nature of plaintiff's 1992 review. All stated their opinion that the committee conducted a fair, unbiased review of plaintiff's performance and none had any preconceived notions regarding plaintiff's reappointment. Additionally, the administrative assistant who staffed the 1992 review committee submitted an affidavit stating that the review was ordinary and conducted as others at the University had been conducted.

In response to defendants' evidence, plaintiff presented an affidavit containing the specific facts relating to his reports to Bondurant, Mattern and Capel. Plaintiff had earlier stated in his complaint his own belief that his appointment was not renewed because

of his reports. The plaintiff also presented an affidavit by John Gullo (Gullo), a former OIS employee, which included his statements that Dr. James Wrenn "told top level computer people in the Hospital that [plaintiff] was 'going to be cut down to size' and they didn't have to worry about [plaintiff's] OIS." Gullo also saw a budget request by plaintiff, on which Bondurant's "main administrator" had commented "I don't think its going to help."

---

The issues are whether (I) the evidence supports summary judgment for the defendants on the "Whistleblower" claim; and (II) Bondurant, Mattern and Capel have been sued only in their official capacity, rendering them immune from plaintiff's claims for emotional distress and misrepresentation.

I

[1] North Carolina General Statute § 126-85, known as the "Whistleblower" Act (the Act) protects State employees who make reports of certain activities described in section 126-84 from retaliation by heads of "any State department, agency, or institution" or retaliation by any other State employee "exercising supervisory authority" over the employee. N.C.G.S. § 126-85 (1993). The Act is violated if the report is a substantial causative factor in any "discharge," threat or discrimination "regarding the State employee's compensation, terms, conditions, location, or privileges of employment." *Id.*; *Kennedy v. Guilford Tech. Community College*, 115 N.C. App. 581, 584, 448 S.E.2d 280, 282 (1994); *see Brooks v. Stroh Brewery Co.*, 95 N.C. App. 226, 230, 382 S.E.2d 874, 878 (applying substantial factor test to retaliatory discharge claim under Occupational Safety and Health Act), *disc. rev. denied*, 325 N.C. 704, 388 S.E.2d 449 (1989); *see also Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 50 L. Ed. 2d 471, 484 (1977) (retaliation claim based on first and fourteenth amendments requires proof that protected conduct was a "substantial or motivating factor" in adverse action). Upon a showing of retaliation the employee is entitled to "damages, an injunction, or other remedies." N.C.G.S. § 126-86 (1993); *Minneman v. Martin*, 114 N.C. App. 616, 618-19, 442 S.E.2d 564, 566 (1994).

In the context of summary judgment in this type of action, once a defendant, moving for summary judgment, presents evidence that the adverse employment action is based on a legitimate non-retaliatory motive, the burden shifts to the plaintiff to present evidence, raising a genuine issue of fact, that his actions under the Act were a sub-

stantial causative factor in the adverse employment action, *see Taylor v. Taylor Prods., Inc.*, 105 N.C. App. 620, 625, 414 S.E.2d 568, 572-73 (1992) (discussing burdens of parties in summary judgment hearing), or provide an excuse for not doing so. N.C.G.S. § 1A-1, Rule 56(f) (1990). In determining whether there are any genuine issues of material fact, the trial court must view the evidence in the light most favorable to the plaintiff and resolve all conflicts in plaintiff's favor, giving plaintiff all reasonable inferences. *Broyhill v. Aycock & Spence*, 102 N.C. App. 382, 389, 402 S.E.2d 167, 172, *disc. rev. denied*, 329 N.C. 266, 407 S.E.2d 831 (1991). A genuine issue of material fact exists if plaintiff's evidence is substantial. *Martin v. Ray Lackey Enters.*, 100 N.C. App. 349, 353, 396 S.E.2d 327, 330 (1990).

In support of their motion for summary judgment, defendants argue that the nonrenewal of plaintiff's appointment was not a result of his reports regarding any conflicts of interest or the possible misappropriation of State resources and instead was based on legitimate non-retaliatory reasons. We agree that the defendants' evidence supports their argument. In support of their argument, defendants presented the undisputed evidence that plaintiff's performance was scrutinized in compliance with University policy. Defendant's evidence also specifically reveals that the final committee review, which recommended that plaintiff not be reappointed, was conducted fairly and without bias. Moreover, the evidence is that there were questions regarding the adequacy of plaintiff's performance, of which plaintiff had knowledge, even before his reports to Bondurant and Mattern. Finally, the evidence reveals the nonappointment was based on the plaintiff's inability to "collaborate with others."

In response to defendants' motion, plaintiff argues that the 1992 review committee was biased by Bondurant and Mattern and that the reasons cited by defendants for the nonrenewal of plaintiff's appointment are pretextual. Plaintiff's complaint contains his own belief that his appointment was not renewed because of his reports. Other than the facts relating to the reports made by plaintiff to Bondurant, Mattern and Capel, which are set forth in his affidavit, plaintiff brings forward an affidavit containing a statement by Gullo that a former student stated that plaintiff would "be cut down to size" and that hospital computer employees "didn't have to worry about [plaintiff's] OIS," and that Bondurant's administrator commented that plaintiff's budget request would not help. Even assuming that these statements would be admissible at trial, *Taylor*, 105 N.C. App. at 625, 414 S.E.2d at 572-73 (evidence used to meet a party's burden at summary judg-

ment must be admissible at trial), these statements do not raise a genuine issue of material fact with regard to whether the plaintiff's reports were a substantial factor in the nonrenewal of his contract, even viewing all the other evidence in plaintiff's favor and giving him all reasonable inferences. The evidence is simply too speculative to support a finding that the plaintiff's nonrenewal was in any way related to the report.

Plaintiff also argues that even if the reasons that defendants give for not renewing his appointment are legitimate, the defendants also retaliated against plaintiff by "undercutting" his authority, "stonewalling" the promised investigation, "setting up oppositional centers of power," and "creating a self-fulfilling review process." Without determining whether these acts "otherwise discriminate" against plaintiff within the meaning of the statute, we reject this argument because these acts of retaliation were not alleged in plaintiff's complaint. *Truesdale v. University of North Carolina*, 91 N.C. App. 186, 190, 371 S.E.2d 503, 506 (1988) (plaintiff's case at summary judgment must be based on allegations in complaint), *disc. rev. denied*, 323 N.C. 706, 377 S.E.2d 229, *cert. denied*, 493 U.S. 808, 107 L. Ed. 2d 19 (1989).

For an additional reason, summary judgment for Capel was correct. This record reveals that he had no supervisory authority over plaintiff and was not the head of any State department, agency or institution. *See* N.C.G.S. § 126-85(a); *Taylor*, 105 N.C. App. at 625, 414 S.E.2d at 572 (summary judgment appropriate where an essential element of plaintiff's case is lacking).

II

[2] Defendants argue that summary judgment for them on the emotional distress and misrepresentation claims was also appropriate because they are protected from these claims by sovereign immunity. We agree.

A governmental entity and its officers or employees when sued in their official capacity are immune from suits based on tort claims, unless there has been some waiver. *Taylor v. Ashburn*, 112 N.C. App. 604, 607, 436 S.E.2d 276, 278-79 (1993), *disc. rev. denied*, 336 N.C. 77, 445 S.E.2d 46 (1994). In determining whether a plaintiff has brought an action against a defendant in his official or individual capacity, it is important to consider both the "nature of the conduct giving rise to the action" and the "nature of the relief sought." 1 Shepard's Editorial

Staff, *Civil Actions Against State and Local Government, Its Divisions, Agencies and Officers* § 1.16 (2d ed. 1992) [hereinafter *Civil Actions*]; see *Taylor*, 112 N.C. App. at 607-08, 436 S.E.2d at 279. The nature of the conduct determines in what capacity one can be sued, *General Elec. Co. v. Turner*, 275 N.C. 493, 498, 168 S.E.2d 385, 389 (1969), and the nature of the relief sought reveals how a defendant has been sued. *Civil Actions* §§ 1.17-.18. The designations made in the caption of the complaint are not determinative. *Taylor*, 112 N.C. App. at 607, 436 S.E.2d at 279.

In this case the allegations in the complaint with respect to the tort claims involve acts of the defendants performed within the bounds of their official duties and in their capacities as representatives of the State. Therefore the individual defendants can only be sued in their official capacity and as such share the governmental immunity enjoyed by the University, an agency of the State. *See Jones v. Pitt County Memorial Hosp.*, 104 N.C. App. 613, 617, 410 S.E.2d 513, 515 (1991) (all tort claims against UNC and its constituent institutions must be brought before the Industrial Commission). This immunity supports the summary judgment on these claims. *See Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E.2d 325, 335 (1981) (summary judgment appropriate where plaintiff cannot surmount defendant's affirmative defense).

Affirmed.

Judges JOHNSON and SMITH concur.