An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1442
NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

FIA CARD SERVICES, N.A.,
    Plaintiff,

v.

CHRIS CAVINESS,
a/k/a JOHN CHRISTOPHER CAVINESS
    Defendant.

Wake County
No. 11 CVD 16592

Appeal by defendant from order entered 26 April 2013 by Judge Margaret P. Eagles in Wake County District Court. Heard in the Court of Appeals 23 April 2014.

> *Sessoms & Rogers, P.A., by Andrew E. Hoke and Mitchell A. Meyers, for plaintiff.*

> *Bryant Duke Paris, III, for defendant.*

ELMORE, Judge.

Defendant timely appeals from an order entered 26 April 2013 granting plaintiff's motion for summary judgment. After careful consideration, we affirm.

## I. Facts

On 31 October 2011, FIA Card Services, N.A. (plaintiff) filed a complaint against Chris Caviness (defendant) for breach of contract. In relevant part, plaintiff alleged that:

> 3. The plaintiff opened a credit account (hereinafter, "Account") for the defendant, at the request of the defendant and extended credit to the defendant through the Account.
>
> 4. The defendant accepted and used the credit provided by the plaintiff and incurred balances due on the Account that the defendant agreed to repay to the plaintiff.
>
> 5. The defendant is in default of the agreement to repay to the plaintiff the credit provided through the Account, in that said defendant has failed to make the monthly payments required as they became due.
>
> 6. Pursuant to the agreement, the defendant is lawfully indebted to the plaintiff in the sum of $10,150.19. Said sum has been outstanding since March 31, 2011.

In March 2012, plaintiff filed a motion for summary judgment pursuant to North Carolina Civil Procedure Rule 56 "on the grounds that there [were] no genuine issues as to any material facts, and the Plaintiff [was] entitled to judgment as a matter of law." Although plaintiff did not present the actual credit card agreement as evidence in support of its motion, plaintiff offered: 1.) copies of monthly billing statements from

November 2008 through March 2011; 2.) checks made payable to plaintiff from Caviness Landscaping Company, LLC, Chris Caviness Landscaping, LLC, defendant (collectively "the Caviness checks"), and George Klenke; and 3.) the affidavit of Raven McRae, an authorized representative of plaintiff. Defendant did not file a written response, submit affidavits, or offer any other supporting materials to combat plaintiff's motion.

## II. Analysis

### a.) Plaintiff's Supporting Documents

Defendant argues that the trial court erred in granting plaintiff's motion for summary judgment because plaintiff's supporting documents were contradictory and Ms. McRae's affidavit was inherently suspect. We disagree.

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)). We must consider "the pleadings, affidavits and discovery materials available in the light most favorable to the non-moving party[.]" *Pine Knoll Ass'n, Inc. v. Cardon*, 126 N.C. App. 155, 158, 484 S.E.2d 446, 448 (1997)

(citations omitted). The movant has the burden to establish that no genuine issue of material fact exists, and "the non-movant only has to refute any showing that his case is fatally deficient." *Broyhill v. Aycock & Spence*, 102 N.C. App. 382, 389, 402 S.E.2d 167, 172 *aff'd,* 330 N.C. 438, 410 S.E.2d 392 (1991 (citation omitted). Even if a party fails to respond to an opponent's motion for summary judgment, the motion should be denied if "the movant's supporting evidence is self contradictory or circumstantially suspicious or the credibility of a witness is inherently suspect either because he is interested in the outcome of the case [or] the facts are peculiarly within his knowledge[.]" *Kidd v. Early*, 289 N.C. 343, 366, 222 S.E.2d 392, 408 (1976).

We first address defendant's contention that the payments to plaintiff by the Caviness checks and George Klenke contradict plaintiff's allegation that a contract existed between itself and defendant. Each Caviness check lists the payer's address as 6649 Mafolie Court, Raleigh, N.C. 27613. This same address appears on defendant's account statements from November 2008 until August 2009. Although one of the Caviness checks predates the account statements, the remaining four checks match payments indicated on the account statements: Chris Caviness Landscaping,

LLC on 3 November 2008 in the amount of $300, Chris Caviness Landscaping, LLC on 25 November 2008 in the amount of $400, Chris Caviness Landscaping, LLC on 15 April 2009 in the amount of $324, and Chris Caviness on 30 November 2009 in the amount of $220. While it is unclear why plaintiff's supporting documents contain a check from Klenke to plaintiff, the check bears no weight in our analysis of whether a contract existed between plaintiff and defendant, especially in light of the Caviness checks. Thus, plaintiff's supporting evidence is not self-contradictory. To the contrary, the Caviness checks provide further support for plaintiff's claim against defendant.

As to Ms. McRae, defendant argues that because she is plaintiff's employee, she is "interested in obtaining a favorable result for [plaintiff][.] . . . As such, McRae's [a]ffidavit is inherently suspect." However, the fact that she may be an interested witness, standing alone, is insufficient to raise a genuine issue of material fact as to plaintiff's claim. *See id*. at 371, 222 S.E.2d at 411 (ruling that an affidavit of an interested party merely creates "latent doubts" of credibility, which have "little, if any, significance" unless the opposing party produces contradictory affidavits or other grounds for impeachment). As such, defendant's argument fails.

**b.) Implied Contract-in-Fact**

Next, defendant argues that the trial court erred in granting plaintiff's motion for summary judgment because plaintiff failed to establish the existence of a valid contract between the parties. Defendant bases his argument solely on the fact that plaintiff failed to offer the credit card agreement between the parties into the record during the summary judgment hearing. We disagree.

In order to prevail on a claim for breach of contract, a party must show: "(1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citation omitted). Mutual assent of both parties to the terms of a contract "is essential to the formation of any contract . . . so as to establish a meeting of the minds." *Connor v. Harless*, 176 N.C. App. 402, 405, 626 S.E.2d 755, 757 (2006) (citation and quotation omitted). Mutual assent is typically formed "by an offer by one party and an acceptance by the other, which offer and acceptance are *essential* elements of a contract." *Id.* (citation and quotation omitted) (emphasis in original). An implied contract-in-fact (implied contract) is "as valid and enforceable as an express contract." *Creech v. Melnik*, 347 N.C.

520, 526, 495 S.E.2d 907, 911 (1998) (citation omitted). The formation of an implied contract "arises where the intent of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts." *Id.* (citation omitted) The conduct of the parties shall imply an offer and acceptance. *Revels v. Miss Am. Org.*, 182 N.C. App. 334, 337, 641 S.E.2d 721, 724 (2007). Although plaintiff failed to offer the credit card agreement into the record during the summary judgment hearing, the undisputed facts establish the existence of an implied contract. Plaintiff presented the trial court with copies of monthly account statements from November 2008 to March 2011. The statements each bear defendant's name, his account number, his mailing address, purchases made, outstanding balance, and payment due date. Importantly, the statements indicate that plaintiff extended a line of credit to defendant for $10,400.00, and defendant repeatedly made purchases on the credit card. The statement also provided specific terms as to method of payment, the calculation of finance charges for late payments, grace periods, and how to keep one's account in good standing. Plaintiff also provided copies of the Caviness checks made payable to plaintiff from September 2008 until November 2009. Nothing in the record

indicates that defendant ever disputed the charges or the amounts owed. Additionally, plaintiff offered Ms. McRae's affidavit, which stated that defendant opened an account with plaintiff "for the purpose of obtaining an extension of credit and did thereafter use or authorize the use of the account for the acquisition of goods, services, or cash advances in accordance with the customer agreement governing use of that account." It further reads, "[t]he books and records of Plaintiff show that Defendant(s) is/are currently indebted to Plaintiff . . . for the just and true sum of $10,150.19 and that all just and lawful offsets, payments, and credits have been allowed." Thus, we hold that, at a minimum, an implied contract was formed between the parties because plaintiff's extension of credit constituted an offer, and defendant's use of the credit card amounted to an acceptance of plaintiff's offer. Moreover, payments to plaintiff by the Caviness checks coupled with the credit card's terms of use on the statements establish a mutual assent to the specific provisions of the contract—to pay the outstanding balance owed as evidenced on the account statements. Accordingly, there is no genuine issue of material fact as to whether a valid contract existed between the parties. *See Miles v. Carolina Forest Ass'n*, 167 N.C. App. 28, 37, 604 S.E.2d 327,

333-34 (2004) (finding the presence of an implied contract between property owners and subdivision association where owners: 1.) received benefits such as maintenance of infrastructure in subdivision, 2.) had notice that such benefits were incurred, and 3.) paid association fees in exchange for the benefits).

### III. Conclusion

In sum, plaintiff's supporting documents were not contradictory, Ms. McRae's affidavit was not inherently suspect, and plaintiff established the existence of a valid contract with defendant. Thus, we affirm the trial court's order granting summary judgment to plaintiff.

Affirmed.

Judges McCULLOUGH and DAVIS concur.

Report per Rule 30(e).