An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1041
NORTH CAROLINA COURT OF APPEALS

Filed: 19 August 2014

DOUGLAS S. HARRIS,
     Plaintiff,

     v.                              Guilford County
                                     No. 12 CVS 5643
LISA BALLANTINE,
     Defendant.


Appeal by plaintiff from order entered 8 March 2013 by Judge John O. Craig, III in Guilford County Superior Court. Heard in the Court of Appeals 23 April 2014.

> *Douglas S. Harris, pro se, for plaintiff-appellant.*
>
> *Law Offices of G. Grady Richardson, Jr., P.C., by G. Grady Richardson, Jr., for defendant-appellee.*


DAVIS, Judge.


Douglas S. Harris ("Plaintiff") appeals from the trial court's 8 March 2013 order granting in part and denying in part the motions for summary judgment of Plaintiff and Lisa Ballantine ("Defendant"). Plaintiff's primary contention on appeal is that the entry of summary judgment on the issue of whether he committed legal malpractice was improper due to the

existence of genuine issues of material fact.  After careful review, we vacate the trial court's order and remand for further proceedings.

### Factual Background

In August 2010, Park Sterling Bank ("the Bank") brought an action ("the Bank Lawsuit") against Defendant in New Hanover County Superior Court seeking a deficiency judgment against her in connection with her default on a loan.  Defendant retained an attorney, Kevin Sink ("Mr. Sink"), to represent her in the Bank Lawsuit.

On 16 December 2010, the Bank served Defendant, through Mr. Sink, with written discovery requests, including a request for admissions pursuant to Rule 36 of the North Carolina Rules of Civil Procedure.  On 28 January 2011, Defendant terminated the services of Mr. Sink[1] and instructed him to send her case file to another attorney, Al Butler ("Mr. Butler"), who was representing Defendant's husband in a separate matter.  Mr. Butler noted that responses to the Bank's pending discovery requests were due on 17 February 2011.  As a result, he obtained an extension of the deadline until 21 March 2011.  On 21 March 2011, Mr. Butler obtained another extension of time, extending the deadline to 13

---

[1] It appears from the record that Mr. Sink never actually withdrew as Defendant's counsel of record in the Bank Lawsuit.

May 2011 while Defendant "pursued the possibility of filing a bankruptcy petition."

On 6 May 2011, Defendant met with Plaintiff, an attorney in Greensboro, to discuss both the Bank Lawsuit and the possibility of her filing a bankruptcy petition. The events that transpired at this meeting are disputed by the parties. Defendant contends that Plaintiff agreed to represent her in the Bank Lawsuit and to respond to the Bank's pending request for admissions. Plaintiff, conversely, maintains that he did not agree to represent her in the Bank Lawsuit and instead merely stated his willingness to "assist" her in preparing her responses to the Bank's request for admissions.

On 16 May 2011, the Bank's attorney emailed Defendant and informed her that

> I have not heard anything further from you in response to my recent emails and most importantly I have had no response (or have any other arrangements been made for a further extension) to my request for the completed discovery documents no later than May 13[.] To this end, please be advised that I plan on moving for summary judgment in order to reduce this matter to judgment. I am sorry but I cannot continue to hold this matter in abeyance any longer as I have held the matter for months now on Al Butler's assurance that he would be filing a bankruptcy petition for you which we now know is not the case.

On 20 June 2011, after failing to receive Defendant's responses by that date, the Bank filed a motion for summary judgment, requesting that each matter contained within its request for admissions be deemed admitted as provided for in Rule 36(a). On that same day, the Bank sent Defendant a letter stating, in pertinent part, as follows:

> Most recently, I received a call from attorney Douglas Harris who indicated that he would be making an appearance in this matter. Although I did not grant an extension or agree that the deemed admitted responses to the requests for admissions would be waived[.] Mr. Harris indicated that he was forwarding the discovery responses and I should receive them no later than May 23, 2011. To date, no discovery responses have been received and my calls to Mr. Harris have gone un-returned. This matter appears on the trial calendar for August 15, 2011 . . . . Please be advised that I intend to rely on the deemed admitted responses to the request for admissions and will not waive this position.

On 1 July 2011, Defendant spoke with another attorney, Grady Richardson ("Mr. Richardson"), who agreed to represent Defendant in the Bank Lawsuit. On 27 July 2011, Mr. Richardson served the Bank's attorney with Defendant's responses to the Bank's request for admissions along with two affidavits. The first affidavit addressed issues presented in the Bank Lawsuit while the second affidavit detailed her interactions with Mr. Sink and Mr. Harris and asserted that she had "been prejudiced

in this action by the failures and ineffectiveness of [Mr. Sink]. . . and [Plaintiff]." In addition, Mr. Richardson also filed a motion to "[w]ithdraw and/or [a]mend [a]dmissions . . . pursuant to Rule 36(b) of the North Carolina Rules of Civil Procedure." The motion was granted by the Honorable Charles H. Henry who entered an order on 3 August 2011 stating that "Defendant's responses dated 27 July 2011 to Plaintiff's Request for Admissions shall be allowed." The Bank subsequently withdrew its motion for summary judgment, and on 29 June 2012, the Bank settled its lawsuit with Defendant for $7,250.00.

Plaintiff filed the present action in Guilford County Superior Court on 24 April 2012 seeking a declaratory judgment that he "never represented [Defendant] on any legal matter and has never been retained whether by contract or payment or agreement to represent [Defendant] on any legal matter." In response, Defendant filed counterclaims alleging professional negligence, legal malpractice, and breach of fiduciary duty. On 20 February 2013, Plaintiff filed a motion for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure, and on 25 February 2013, Defendant filed a cross-motion for summary judgment.

The trial court heard the parties' respective motions for summary judgment on 4 March 2013. On 8 March 2013, the court

entered an order (1) denying Plaintiff's motion for summary judgment as to his declaratory judgment claim; (2) finding that Plaintiff had committed legal malpractice; (3) granting Plaintiff partial summary judgment as to the claims for damages asserted by Defendant in her counterclaims; (4) finding Plaintiff "liable to the Defendant for nominal damages of $1.00"; (5) granting Defendant's motion for summary judgment as to Plaintiff's claim for declaratory relief; and (6) ordering Plaintiff to pay Defendant the total sum of $9,214.20, consisting of $8,590.00 in attorneys' fees pursuant to N.C. Gen. Stat. § 6-21.5 and $264.20 in costs based on N.C. Gen. Stat. § 7A-305.

In response to an exchange of emails between the parties and the trial court over whether Defendant had sufficiently requested an award of special damages in her counterclaims, Defendant filed on 2 April 2013 a motion for reconsideration pursuant to Rule 60(b). However, before the trial court ruled on this motion, Plaintiff filed a notice of appeal to this Court regarding the trial court's 8 March 2013 order.

On 24 September 2013, Defendant filed a motion notifying this Court of the pending Rule 60(b) motion and requesting that the case be remanded to the trial court for ruling on that motion. This Court entered an order on 7 October 2013 remanding

the matter to the trial court for it to "conduct an evidentiary hearing on the Rule 60(b) motion pending before it . . . and [to] indicate what action it would be inclined to take were an appeal not pending before this Court."

In response to this Court's order, an evidentiary hearing on the Rule 60(b) motion was held by the trial court on 14 November 2013. On 25 November 2013, the trial court entered an order stating that if it had jurisdiction to rule on Defendant's Rule 60(b) motion, it would be inclined to award Defendant's "requested attorneys' fees, costs and expenses as damages arising out of, and proximately caused by, [Plaintiff's] legal malpractice and negligence in the Bank Lawsuit . . . ."

**Analysis**

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones,* 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotation marks omitted). The role of the trial court in ruling on a motion for summary judgment "is to determine whether a genuine issue of material fact exists, but not to decide an issue of fact." *Broyhill v. Aycock & Spence*,

102 N.C. App. 382, 389, 402 S.E.2d 167, 172, *aff'd per curiam*, 330 N.C. 438, 410 S.E.2d 392 (1991).

In the present case, the key issue before us is whether the trial court usurped the role of the fact-finder in its 8 March 2013 order. Because the record reveals the existence of genuine issues of material fact, we conclude that the trial court's order must be vacated.

An attorney-client relationship is formed "when a client communicates with an attorney in confidence seeking legal advice regarding a specific claim and with an intent to form an attorney-client relationship." *Raymond v. N.C. Police Benevolent Ass'n., Inc.*, 365 N.C. 94, 98, 721 S.E.2d 923, 926 (2011). Such a relationship may be implied by the parties' conduct "and is not dependent on the payment of a fee, nor upon the execution of a formal contract . . . . The dispositive question . . . is whether [the] attorney's conduct was such that an attorney-client relationship could reasonably be inferred." *Booher v. Frue*, 98 N.C. App. 585, 587, 392 S.E.2d 105, 106, *disc. review. denied*, 328 N.C. 89, 402 S.E.2d 410 (1991) (internal citations and quotation marks omitted). "[I]n a professional malpractice case predicated upon a theory of an attorney's negligence, the plaintiff has the burden of proving by the greater weight of the evidence: (1) that the attorney

breached the duties owed to his client . . . and that this negligence (2) proximately caused (3) damage to the plaintiff." *Rorrer v. Cooke,* 313 N.C. 338, 355, 329 S.E.2d 355, 366 (1985) (citations omitted).

In support of her motion for summary judgment, Defendant submitted an affidavit in which she testified that (1) on 6 May 2011, she traveled to Greensboro at the request of Plaintiff to discuss issues surrounding the Bank Lawsuit; (2) during this meeting, Plaintiff agreed to represent her in the Bank Lawsuit and agreed to contact the Bank's attorney regarding the deadline for her responses to the Bank's request for admissions; (3) the Bank's attorney emailed Defendant that the discovery responses were due by 13 May 2011; (4) on 16 May 2011, the Bank's attorney emailed Defendant that no extension to the 13 May 2011 deadline had been granted and that he would be seeking the entry of summary judgment; (5) Defendant called Plaintiff after receiving the Bank attorney's email at which time Plaintiff told her that he had left a message for the Bank's attorney and would call him again in order to obtain an extension; (6) Plaintiff subsequently informed Defendant that the Bank's attorney had agreed to extend the deadline until 23 May 2011; (7) on 23 May 2011, Plaintiff told Defendant that he was going to submit the responses to the Bank's attorney by the end of the day; (8) on

22 June 2011, Defendant was served with the Bank's motion for summary judgment which "shocked and surprised" her; and (9) Defendant attempted to contact Plaintiff to ascertain why the discovery responses had not been submitted but never received an explanation from Plaintiff.

In response to Defendant's motion for summary judgment, Plaintiff submitted an affidavit in which he gave the following account of the key events: (1) on 6 May 2011, Plaintiff met with Defendant to discuss a "bankruptcy matter" and during this meeting they also discussed the Bank Lawsuit; (2) Plaintiff never agreed to represent Defendant in the Bank Lawsuit nor did he agree to "answer admissions and other discovery requests pursuant to the Bank Lawsuit"; (3) during the 6 May 2011 meeting, he merely agreed to "assist her in timely preparing and responding to the bank's [request for admissions]" and then proceeded to provide such assistance via a phone conversation in which he discussed proposed discovery responses with her over the course of an hour "with the expectation that she would be answering and that she would be filing them"; (4) the only conversation he had with the Bank's attorney was a single phone call at Defendant's request in which Plaintiff informed the Bank's attorney that Defendant would provide her responses shortly and asked the Bank's attorney "if he would have any

problem switching mediators because [Defendant] did not like the current one"; and (5) no payment arrangements were ever agreed upon between Plaintiff and Defendant.

Based on the competing factual assertions contained in the parties' respective affidavits regarding the events at issue, we believe that resolution of this case at the summary judgment stage was improper. There is conflicting evidence in the record regarding the specific contours of any attorney-client relationship that may have existed between Plaintiff and Defendant. We have previously vacated a trial court's entry of summary judgment in a legal malpractice action where factual disputes existed regarding the alleged attorney-client relationship. *See Broyhill*, 102 N.C. App. at 389-90, 402 S.E.2d at 172 (concluding that trial court's entry of summary judgment in malpractice action was improper where parties disputed whether attorney had actually been retained to represent plaintiff in real estate transaction); *Ives v. Real-Venture, Inc.*, 97 N.C. App. 391, 399, 388 S.E.2d 573, 578 (holding that trial court erred in granting summary judgment on legal malpractice claim where genuine issue of material fact existed as to whether attorney had duty to conduct title search or obtain title insurance on behalf of party asserting malpractice

claim), *disc. review. denied,* 327 N.C. 139, 394 S.E.2d 174 (1990).

In the present case, it will be the role of the fact-finder at trial to determine the nature of any attorney-client relationship that may have existed between the parties and whether any applicable duty of care arising out of that relationship was breached by Plaintiff. Accordingly, we vacate the trial court's order and remand this case for trial. Because we are vacating the trial court's order, we decline to address the remaining arguments raised by the parties.

## Conclusion

For the reasons stated above, we vacate the trial court's 8 March 2013 order and remand for further proceedings.

VACATED AND REMANDED.

Judges STROUD and McCULLOUGH concur.

Report per Rule 30(e).